COMMONWEALTH *vs.* ROBERT A. HAKALA. May 15, 1986. *Practice, Criminal,* Instructions to jury, Failure to make objection. *Assault and Battery by Means of a Dangerous Weapon. Defense of Others.*

About midnight, December 8, 1984, William Sinclair, aged twenty, intoxicated or approaching that condition, called on Carolyn Boulette, aged

---

twenty, at her apartment in North Grafton.[1] Also present were Lori Dupuis, aged seventeen, and the defendant, aged thirty-eight, her boyfriend. When joshed about having been a pal of a man who had been recently revealed to be homosexual, Sinclair became angry and flung himself out of the apartment. He returned, perhaps fifteen minutes later, offering apologies, but as Carolyn was reluctant to let him in, he commenced banging or kicking the door. Finally he was allowed to enter but proceeded to say something disparaging about the defendant, who overheard the remark. The defendant came forward. There was a scuffle. It ended in the defendant's pointing his .38 caliber revolver at Sinclair.[2] As Sinclair left and went into the street, he was followed by Lori. She clung to him, pursued him, and taunted him to fight her. Apparently he said he was willing to take on the defendant disarmed. After some minutes Sinclair backhanded Lori. That was his testimony. There was other testimony that he had struck her more forcefully. Evidently she was on the ground, screaming, when the defendant appeared on the scene with his revolver.[3]

Now without any parleying the defendant at fairly close range fired his weapon at or in the direction of Sinclair. The bullet struck Sinclair in the calf. He fell, then rose, and limped away. As he did so, the defendant fired again, without effect.

For this shooting episode, the defendant stood trial on an indictment for assault and battery with a dangerous weapon. The jury found him guilty upon proof roughly as outlined above. The defendant's claims on appeal are directed to two passages in the judge's instructions.

1. The defendant insisted correctly that the Commonwealth must establish beyond a reasonable doubt that he exceeded any right to come to the defense of another, Lori Dupuis. In instructing on this matter, the judge spoke of the use of deadly force in giving such aid. He said there was a "duty to avoid physical contact"; "a person must, before resorting to deadly force to defend himself or another, take advantage of all proper and reasonable means to avoid the use of deadly force. The test . . . is reasonableness under all the circumstances. The right to use deadly force, if the right ever existed in the first place, is gone once the threat has dissipated." The defendant seizes upon the first quoted phrase and says this amounted to an instruction that there was a duty to retreat, which, he argues, was incongruous as applied to one who intervened to help another. As we said in a closely matching case, "[t]he argument requires a tortured reading of the judge's instruction and drawing from it a meaningless message." *Commonwealth* v. *Sullivan,* 17 Mass. App. Ct. 981, 982 (1984). The judge neither

[1] Sinclair was accompanied by another person who left and does not figure in the case.

[2] The defendant had a license to carry this weapon.

[3] There was testimony by the defendant that he had twice called the police for help, but was put off.

said nor implied anything about retreat; he was speaking about the occasion for the use of a lethal weapon, and his statement was appropriate. If words would avert that occasion, they should be used; the permissible use of force scaling up to deadly force follows a rule of reason. We add that the judge's instructions ended with a statement of the substance of *Commonwealth* v. *Martin*, 369 Mass. 640, 649 (1976), directly in point on the extent of an actor's right to use force against one person to protect another.

2. The defendant claims that the judge erroneously omitted to charge on "accident." However, the defendant took no proper objection. We are therefore to consider whether the error, if there was one, created a substantial risk of a miscarriage of justice in the sense of *Commonwealth* v. *Freeman*, 352 Mass. 556, 564 (1967).

There was no error and no need to apply the *Freeman* standard. The defendant did purpose firing the revolver, and even if we accept his protestation that he did not purpose striking Sinclair but was aiming at the ground nearby, it is doubtful that he can claim "accident" of a kind that negates criminal responsibility. Cf. *Commonwealth* v. *Palmariello*, 392 Mass. 126, 144-145 (1984). We do not have that question to decide, because the judge in fact charged sufficiently on "accident" although he did not use the word. Instead he charged, in effect, that it was part of the Commonwealth's burden to show that, in discharging the revolver, the defendant either intended harm to Sinclair or was recklessly indifferent to such a consequence. This gave the defendant the benefit in substance of the hypothesis of accident. See *Commonwealth* v. *Lowe*, 391 Mass. 97, 108-112 (1984).

*Judgment affirmed.*

*Elizabeth H. Scott*, Committee for Public Counsel Services, for the defendant.

*Claudia R. Sullivan*, Assistant District Attorney, for the Commonwealth.