NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11850

COMMONWEALTH  vs.  JAMES ALLEN.


Suffolk.     December 10, 2015. - April 20, 2016.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, &
Hines, JJ.


Homicide.  Firearms.  Defense of Others.  Practice, Criminal,
     Instructions to jury.  License.  Constitutional Law, Right
     to bear arms.



     Indictments found and returned in the Superior Court
Department on February 1, 2011.

     The cases were tried before Patrick F. Brady, J.

     The Supreme Judicial Court granted an application for
direct appellate review.


     Matthew V. Soares for the defendant.
     Amanda Teo, Assistant District Attorney (Jennifer J.
Hickman, Assistant District Attorney, with her) for the
Commonwealth.
     Levi W. Swank, of the District of Columbia, & David A.F.
Lewis & Stephen D. Poss, for Massachusetts Association of
Criminal Defense Lawyers, amicus curiae, submitted a brief.

CORDY, J.  On March 21, 2012, a jury convicted the defendant, James Allen, of murder in the second degree,[1] and of carrying a firearm without a license, possession of ammunition without a firearms identification card, and possession of a large capacity firearm feeding device without a license.[2]  At trial, his defense was that he was justified in using deadly force because he was coming to defense of a friend (Shawn Buchanan) who was being threatened with deadly force by the victim, Senai Williams.

The defendant timely appealed his conviction, and we granted his application for direct appellate review.  On appeal, he raises several claims.  First, he argues that the trial judge's instruction to the jury on defense of another was incorrect because it improperly suggested that the defendant may have had a duty to retreat, and because it negated the possibility of a finding of so-called excessive force manslaughter by instructing that the defendant was required to avail himself of available alternatives before employing deadly force and that if the Commonwealth proved that the defendant

---

[1] The defendant was charged with murder in the first degree, and the jury was instructed on murder in the first degree by reason of deliberate premeditation.

[2] The defendant was tried together with Shawn Buchanan. Buchanan was acquitted of being an accessory after the fact to the offense of assault and battery by means of a dangerous weapon, and of several firearms charges.

used excessive force then it had proved that he did not act in lawful defense of another. The defendant also claims error based on misstatements by the prosecutor in closing argument; the admission of irrelevant and prejudicial testimony; insufficient evidence supporting the firearms convictions; and constitutional violations in connection with the firearm indictments. We conclude that portions of the jury instructions concerning excessive force manslaughter were erroneous and prejudicial. Accordingly, we reverse the defendant's conviction of murder in the second degree and remand the case for a new trial on that charge. We affirm the defendant's remaining convictions.[3]

1. Background. We summarize the evidence. On November 18, 2010, the defendant shot and killed the victim. The shooting arose from a dispute between two groups of neighbors and their associates residing at 20 and 23 Homestead Street in the Roxbury section of Boston. The 20 Homestead Street group included the victim; his girl friend, Shaquice Herring; and her mother, brothers, and cousins. The 23 Homestead Street group included the defendant; his friend, Shawn "Lucky" Buchanan; Buchanan's mother; his girl friend; and his half-brother, Rellindo Stephens.

---

[3] We acknowledge the amicus brief submitted by the Massachusetts Association of Criminal Defense Lawyers.

The events that culminated in the shooting began that afternoon, when Stephens and some friends were looking for a place to smoke marijuana. Because his mother was home, Stephens decided to smoke in the hallway of 20 Homestead Street. Herring's mother, who had received complaints from her landlord about marijuana smoke in the hallway, told the victim and two others in their group to go downstairs to tell Stephens and his friends they could not smoke in the hallway. Following a tense exchange of words, the victim grabbed Stephens and forced him out the door.

As Stephens crossed the street to return to his house, he saw Herring in her window and called her a bitch. Angered, she went outside to confront him. The victim eventually separated the two, but not before Herring slapped and punched Stephens in the face.

Stephens called his brother, Buchanan, about the incident. Buchanan, accompanied by the defendant, went to Homestead Street. By the time they arrived, night had fallen and the street lights were on. When Buchanan got to Homestead, he beckoned to Herring and the victim to come down to the street. Eventually, Stephens joined the three, who were speaking calmly with one another. The conversation became more heated as they began to discuss the earlier incident with Stephens. Someone asked if the victim had hit Stephens, and Herring told Buchanan

that she, and not the victim, had hit him.  The victim attempted to demonstrate the manner in which he had made contact with Stephens in the hallway; Stephens, however, was still upset and demanded that the victim take his hands off of him.  Likewise, Buchanan told the victim he did not need to touch Stephens to explain.  The defendant, who was standing on the porch of 20 Homestead, said to Buchanan, "Handle your business, Luck."  At this time, the victim moved to the side of Herring and then reached over her, trying to punch Buchanan.

A number of people had converged on their porches and sidewalk to watch the escalating confrontation, including other members of the two groups.  A neighbor living at 21 Homestead also watched the confrontation from her porch.  The defendant and others suggested that the victim and Buchanan have a "fair one," a one-on-one fist fight.

While the defendant stood on the front porch of 20 Homestead, Buchanan and the victim began to fight.  They repeatedly swung at each other without making contact.  At one point, the two men were getting close to an automobile belonging to the neighbor's father, which was parked on the street; at her request, they moved away from the vehicle.  It appeared to the neighbor that "they . . . didn't really want to fight."  Around this time, the defendant came down the front steps of 20 Homestead into the street.

The testimony about what happened next, in the moments prior to the shooting, is in conflict. Herring testified that both Buchanan and the victim pulled out knives, and that she made the victim walk away from Buchanan at that point. She also testified that the latch on the victim's knife was broken, so that the blade would not stand up straight. Others testified that Buchanan pulled out a knife and then the victim pulled out a knife. Still another witness testified that the victim never had a chance to get his knife out of his pocket.

Stephens, however, testified that Buchanan had been holding a cellular telephone when the fight broke out and that when he went to put it in his pocket, the victim asked if Buchanan was "reaching." He further testified that the victim began "jumping at [Buchanan], like breasting," that he had a knife in his hand, and that Buchanan began backing away from the victim. Another witness testified that she saw a knife in the victim's hand, although Buchanan's back was to her so she could not see if he was holding anything.

The testimony concerning the distance between Buchanan and the victim is also in conflict, with some witnesses testifying the two men were a little more than an arm's length apart and another testifying that they were at least one automobile length apart. According to one witness, as the victim backed away from Buchanan, the defendant came around a vehicle in a creeping

fashion, pulled a gun, and fired it over Buchanan's shoulder. The victim fell to the ground. Some witnesses heard the defendant say something like, "You don't bring a knife to a gunfight." Herring heard the defendant say this before he fired the gun; the others heard him say it after the gun had been fired.

The victim got up and ran to the rear of 20 Homestead, having been shot once in the right lower back.[4] He was taken to the hospital, where he was pronounced dead. The defendant fled toward Walnut Avenue, while Buchanan ran into 23 Homestead.

When the police arrived, Herring screamed, "[H]urry up, hurry up, he's dying," and ran to the back of the building. Shortly thereafter, based on a description of the shooter, officers stopped the defendant near the Jackson Square subway station. The defendant told the officers that he had just gotten off the bus, that he was coming from his girl friend's apartment in Somerville, and that he was going to see his sister.

The defendant was subsequently arrested. The K-9 unit searched 23 Homestead the next day and recovered the firearm

---

[4] The medical examiner who performed the autopsy testified that he was not able to determine the angle that the victim was at when he was shot.

used in the shooting, concealed behind a box inside a small storage area in the basement.

The police also recovered the victim's knife.  A Boston police department criminologist testified that the knife's blade did not stay up because the knife was missing its "innards." She also testified that she did not know if the knife worked before she examined it.

2.  Jury instructions.  The defendant argues that the judge's instruction on defense of another (1) erroneously conflated principles of self-defense and defense of another by suggesting that the defendant had a duty to retreat; and (2) improperly negated the possibility of a finding of so-called excessive force manslaughter by stating, among other things, that the defendant was required to avail himself of available alternatives before employing deadly force.[5,6]  The ambiguous,

---

[5] For the first time on appeal, the Commonwealth argues that the defendant was not entitled to the defense of another instruction.  Notwithstanding the untimeliness of this argument, the evidence, viewed in the light most favorable to the defendant, see Commonwealth v. Okoro, 471 Mass. 51, 68 (2015), was sufficient to require the instruction, especially given the conflicting testimony about whether both the victim and Buchanan had knives, who took his knife out first (if at all), and whether either man was backing away from the other at the moment of the shooting.  See Commonwealth v. Norris, 462 Mass. 131, 141 (2012) (instructions on defense of another warranted where evidence is sufficient to create reasonable doubt as to whether defendant reasonably believed intervention was necessary to prevent harm to third party).

<hr>

[6] The instruction was, in relevant part, as follows, with added emphasis to the challenged portions:

"In order to defend another person with a dangerous weapon likely to cause serious injury or death, or in other words to use deadly force, the person using the weapon or deadly force must have a reasonable apprehension that the other person is in danger of great bodily harm or death, and a reasonable belief that no other means would suffice to prevent such harm.

"Put another way, the proper exercise of defense of another person means that a person in the defendant's circumstances, Mr. Allen's circumstances, would reasonably believe that the other person was about to be attacked and that the other person was in immediate danger of being killed or seriously injured, and, and that there was no other way to avoid the attack. A person using a dangerous weapon or deadly force in defense of another must also have actually believed, actually believed that the other person was in imminent danger of serious harm or death. The person may not use force in defense of another person until he has availed himself of all proper means to avoid physical combat. A person who reasonably but mistakenly believes that the other person is in imminent danger of serious bodily harm or death, and that he has used all proper means to avoid the use of force, may still use deadly force to defend the other person. . . .

"[T]he Commonwealth must prove beyond a reasonable doubt that the defendant did not, did not act in defense of another. The Commonwealth may satisfy that burden by proving beyond a reasonable doubt any one, any one of the following propositions. Number one, the defendant did not subjectively believe that Shawn Buchanan was in imminent danger of serious injury or death. Or, or, number two, even if the defendant, Mr. Allen, believed Mr. Buchanan was in such danger, the defendant's belief was not objectively reasonable. Or, number three, the defendant failed to avail himself of other available alternatives before employing deadly force. If the Commonwealth has proved any one of those things, then it has proved that the defendant did not act in defense of another.

confusing, and contradictory nature of the instructions, argues the defendant, warrants reversal of his conviction. We agree, although for somewhat different reasons than those proffered by the defendant.

Because the defendant raised a timely objection to the judge's instruction to the jury, we review his claim for prejudicial error. Commonwealth v. Kelly, 470 Mass. 682, 687

---

"Now there is one additional way in which the Commonwealth may prove that the defendant did not act in lawful defense of another. You will recall that I told you when I was explaining the legal concept of defense of another that a person may use no more force than is reasonably necessary in all of the circumstances to defend another person. If a person uses unreasonable force or excessive force, then he is not acting in lawful defense of another. Thus, if the Commonwealth proves that the defendant used excessive force in defending Shawn Buchanan, then it has proved that the defendant did not act in lawful defense of another. However, . . . excessive force in otherwise lawful defense of another is a mitigating circumstance, a mitigating circumstance that reduces the offense of murder to manslaughter. Manslaughter is the unlawful killing of a human being using excessive force in defense of another.

"Thus, if the Commonwealth has failed to prove any one of the three things that I previously explained, number one, that the defendant did not subjectively believe that Shawn Buchanan was in imminent danger of serious injury or death, or number two, even if the defendant, Mr. Allen, believed Mr. Buchanan was in such danger, the defendant's belief was not objectively reasonable, or, number three, the defendant failed to avail himself of other available alternatives before employing deadly force, but . . . the Commonwealth has proved beyond a reasonable doubt that the defendant used excessive force in self-defense, then you would be warranted in finding the defendant guilty of manslaughter."

(2015). We determine "whether the instructions were legally erroneous, and (if so) whether the error was prejudicial." Id. at 688, quoting Kelly v. Foxboro Realty Assocs., LLC, 454 Mass. 306, 310 (2009). We will not find prejudice where an error "did not influence the jury, or had but very slight effect . . . . But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, [then] it is impossible to conclude that substantial rights were not affected." Kelly, 470 Mass. at 688, quoting Commonwealth v. Flebotte, 417 Mass. 348, 353 (1994). We evaluate jury instructions "as a whole, looking for the interpretation a reasonable juror would place on the judge's words . . . rather than scrutinizing bits and pieces removed from their context" (citations, quotations, and alterations omitted). Commonwealth v. Harris, 464 Mass. 425, 434 (2013).

The elements of defense of another are well settled: "An actor is justified in using force against another to protect a third person when (a) a reasonable person in the actor's position would believe his intervention to be necessary for the protection of the third person, and (b) in the circumstances as that reasonable person would believe them to be, the third person would be justified in using such force to protect himself." Commonwealth v. Young, 461 Mass. 198, 208 (2012),

quoting <u>Commonwealth</u> v. <u>Martin</u>, 369 Mass. 640, 649 (1976).[7] The jury need not find that the third person was entitled to use force in self-defense, "however, the intervening defendant must have had a reasonable belief that the third person was being unlawfully attacked." <u>Commonwealth</u> v. <u>Okoro</u>, 471 Mass. 51, 68 (2015). "The reasonableness of the belief may depend in part on the relationships among the persons involved." <u>Martin</u>, <u>supra</u> at 649. "[I]f the defendant uses deadly force in order to protect another where that amount of force was unwarranted, the defendant's conduct will not be fully excused and he or she may

---

[7] At the time of the defendant's trial, the model jury instructions provided:

"A homicide is also excused and is therefore not a crime, if it results from the proper exercise of the defense of a third person. A person may lawfully use a dangerous weapon (or deadly force) in defense of a third person when a reasonable person in the actor's position would believe that such intervention was necessary for the protection of the third person, and in the circumstances as that reasonable person would believe them to be, the third person would have been justified in using a dangerous weapon (or deadly force) to protect himself.

"<u>The defense of another instruction should mirror the self-defense instructions</u>.

"The Commonwealth must prove beyond a reasonable doubt that the defendant did not act in defense of a third person. If the Commonwealth fails to [do so] . . . then you must find the defendant not guilty." (Emphasis in original.)

Model Jury Instructions on Homicide 58 (1999).

still be found guilty of manslaughter." Okoro, supra at 68, citing, Martin, supra.

a. Duty to retreat. We first consider the defendant's argument that the instruction on defense of another was erroneous because it intermingled principles of self-defense with defense of another, creating the improper suggestion that the defendant had a duty to retreat before using force in defense of another. Specifically, the defendant takes issue with the following instruction:

> "The person [claiming defense of another] may not use force in defense of another person until he has availed himself of all proper means to avoid physical combat. A person who reasonably but mistakenly believes that the other person is in imminent danger of serious bodily harm or death, and that he has used all proper means to avoid the use of force, may still use deadly force to defend the other person."

The defendant argues that this language deviates from the model jury instructions and is careless in its use of the pronoun "he," creating ambiguity as to which actor, the aider (the defendant) or the aided (Buchanan), must "avail himself of all proper means to avoid physical combat." Moreover, says the defendant, the instruction, contrary to Massachusetts law, imposes both a duty to exhaust available alternatives before using deadly force as well as a duty to retreat when defending another. The defendant also posits that the ambiguity and error were compounded by the judge's repeated use of this language,

which essentially added a "third prong" to the established elements of the defense of another defense. Although we agree that the instructions were flawed and confusing as to these points, and we disapprove of the inclusion of the "third prong" language,[8] we disagree that the instruction, taken as a whole, constitutes reversible error.

Although this court has not had occasion to address the precise issue raised by the defendant, we have found two cases from the Appeals Court that addressed the issue whether instructions on defense of another improperly imposed a duty of retreat. See Commonwealth v. Hakala, 22 Mass. App. Ct. 921 (1986); Commonwealth v. Sullivan, 17 Mass. App. Ct. 981 (1984). These cases are instructive, as the defendants there, as here, argued that the jury instructions, though somewhat differently formulated, erroneously imposed a duty of retreat on a defendant claiming defense of another.

In Sullivan, the defendant argued it was erroneous for the judge to "employ[] the words 'self defense' in his explanation

---

[8] The judge indicated that he believed our decision in Commonwealth v. Williams, 450 Mass. 879, 885 n.3 (2008), required the inclusion of this language. We take this opportunity to clarify that Williams, which dealt with instructions on self-defense, does not impose such a requirement with respect to instructions on defense of another. Rather, judges should look to the 2013 Model Jury Instructions on Homicide, which provide a clear formulation of when deadly force may be employed in defense of another.

of the defense of another principle," and by doing so, "incorporated in the latter principle the idea that the defendant had to take reasonable means to avoid combat." Sullivan, 17 Mass. App. Ct. at 981-982. Similarly, in Hakala, the defendant claimed error in the judge's statements that there was a "duty to avoid physical contact" and that "a person must, before resorting to deadly force to defend himself or another, take advantage of all proper and reasonable means to avoid the use of deadly force." Hakala, 22 Mass. App. Ct. at 922.

In both cases, the Appeals Court found no error, noting that a jury was unlikely to construe the instructions as imposing a duty to retreat because "coming to the aid of another involves intervention and necessarily is irreconcilable with retreat." Sullivan, 17 Mass. App. Ct. at 982. See Hakala, 22 Mass. App. Ct. at 922-923. And, insofar as the instructions went to the occasion to use a deadly weapon, the statement that a defendant must "take advantage of all proper and reasonable means to avoid the use of deadly force," id. at 922, was appropriate because "[i]f words would avert that occasion, they should be used; the permissible use of force scaling up to deadly force follows a rule of reason." Id. at 923. "The test . . . is reasonableness under all the circumstances." Id. at 922.

Likewise, the instructions here, although abstruse, do not require reversal insofar as they blend together principles of self-defense and defense of another. Nowhere in the instruction did the judge say anything about "retreat." See id. at 922-923. Taken as a whole, the judge's charge properly conveyed that the Commonwealth bore the burden of proving beyond a reasonable doubt that the defendant did not act in defense of another. Moreover, given the incompatible nature of intervention and retreat, we do not conclude that reasonable jurors would have construed the instructions as imposing a duty to retreat.[9] See Commonwealth v. Miller, 457 Mass. 69, 75 (2010) ("[W]e consider the jury charge as a whole, looking for the interpretation a reasonable juror would place on the judge's words" [quotations and citation omitted]). Additionally, we concur with the court in Hakala that incorporating language from the self-defense instructions is appropriate to convey the point that the defendant was required to avail himself of other available

---

[9] Massachusetts, unlike the Model Penal Code and a small minority of jurisdictions, has never adopted a rule of retreat in connection with the defense of others. See 2 Criminal Law Defenses § 133, at 104 & n.6 (1984) (discussing § 3:05 of Model Penal Code and relevant State statutes). We decline to do so now, as we agree that "the retreat rule itself [is] unnecessary. In this context, the obvious inability of a person in a defense of others situation to even understand, let alone apply, such complex retreat and surrender rules further supports the view that they should be done away with." Id. at § 133, 104.

alternatives before employing deadly force was appropriate inasmuch as it went to the circumstances in which a deadly weapon might be used, and its reasonableness.  We agree that, as a matter of principle, intervention with a deadly weapon is an act of last resort, and that a jury may consider whether other actions would have "avert[ed] the occasion" to use deadly force.  Hakala, 22 Mass. App. Ct. at 923.  The policy underlying the defense of another defense is "to discourage indifference to the plight of strangers."  Young, 461 Mass. at 208.  The defense promotes "the social desirability of encouraging people to go to the aid of third parties who are in danger of harm as the result of the unlawful actions of others."  Commonwealth v. Monico, 373 Mass. 298, 303 (1977).  The facts in this case present a murkier scenario than one where an innocent party is set upon by an attacker.  The victim and Buchanan were engaged in mutual combat when the defendant fired his gun at the victim.  The policy underlying the defense of another intrinsically comprehends a distinction between circumstances that justify coming to the aid of another, and those where the actions of the aider, rather than minimizing the effect of unlawful violent acts, aggravate it, and it is for the fact finder to differentiate between these scenarios.  Given these considerations, it was not inappropriate for the judge to instruct the jury to consider whether the defendant had no other alternatives than to employ deadly force.

Accordingly, we conclude that the instructions, though imperfect and confusing, did not constitute reversible error.

b. <u>Excessive force instruction</u>. The defendant also argues that the judge's instructions were erroneous because they negated the possibility of a finding of so-called excessive force manslaughter by first stating that the defendant was required to avail himself of available alternatives before employing deadly force and then instructing the jury as follows:

> "[T]here is one additional way in which the Commonwealth may prove that the defendant did not act in lawful defense of another. You will recall that I told you when I was explaining the legal concept of defense of another that a person may use no more force than is reasonably necessary in all of the circumstances to defend another person. If a person uses unreasonable force or excessive force, then he is not acting in lawful defense of another. Thus, if the Commonwealth proves that the defendant used excessive force in defending Shawn Buchanan, then it has proved that the defendant did not act in lawful defense of another. However, . . . excessive force in otherwise lawful defense of another is a mitigating circumstance, a mitigating circumstance that reduces the offense of murder to manslaughter."

We agree with the defendant that the instructions erroneously suggested that if he used excessive force, the killing was murder and not manslaughter. The instructions plainly state that a person who uses "excessive force" did not act in "lawful defense of another," and thus, inferentially, is not entitled to the benefit of the defense and is thus guilty of some degree of murder. This formulation is contrary to the

settled law.  "The proper rule, of course, is that where excessive force is used in defense of another, the crime may be mitigated from murder to manslaughter."  Young, 461 Mass. at 212.

Put differently, "the use of excessive force in defense of another does not cause the defendant to lose the benefit of the defense entirely . . . but instead may warrant a finding of manslaughter."  Commonwealth v. Johnson, 412 Mass. 368, 371 (1992).  Although a person who uses excessive force in defense of another loses the justification for using force and is therefore not relieved of criminal liability, in such cases, "the degree of criminal liability becomes the issue, and the defendant's guilt may be mitigated if, in the circumstances, he had a right to use force in defense of another, but used excessive force."  Id. at 373.  Here, we conclude that the judge's instructions failed to distinguish adequately between "justification and mitigation . . . [leaving the jury] with no correct understanding of the defendant's principal . . . defense."  Id. at 373.

The judge went on to explain that if the Commonwealth failed to prove that the defendant did not subjectively believe that Buchanan was in imminent danger of serious injury or death, or that his belief was not objectively reasonable, and that the defendant failed to avail himself of other available

alternatives before employing deadly force, but that "the Commonwealth has proved beyond a reasonable doubt that the defendant used excessive force in self-defense [sic], then you would be warranted in finding the defendant guilty of manslaughter."

This part of the instruction did not cure the misstatement of law in the preceding paragraph. Although the second instruction is mostly correct, the judge appears to have mistakenly used the term "self-defense" instead of "defense of another." In addition to being confusing, the second instruction also failed to "make it clear to the jury that it carried more weight than . . . the incorrect one" (citation and quotation omitted). Commonwealth v. Lapage, 435 Mass. 480, 484 (2001). Nor did the judge acknowledge or tell the jury that his initial instruction on manslaughter was erroneous. Id. at 485. This error was exacerbated by the imprecise quality of the instructions as a whole.

We conclude that these errors were prejudicial. Although the insertion of self-defense principles into the instructions on defense of another did not, in this case, constitute reversible error, the confusing nature of the instructions on both defense of another and excessive force manslaughter, taken together, created a strong possibility that the jury believed that if the defendant used excessive force in defense of

another, he did not act in the lawful defense of another, and a finding of murder in the second degree was required. See Kelly, 470 Mass. at 688. Accordingly, there must be a new trial.[10]

3. Defendant's firearm convictions. a. Commonwealth's burden of proof. Citing the dissent in Powell v. Tompkins, 783 F.3d 332, 349 (1st Cir. 2015) (Torruella, J., dissenting), the defendant argues that he was entitled to a required finding of not guilty on his firearm convictions because the Commonwealth presented no evidence that he lacked the required firearm licenses, and thus failed to prove beyond a reasonable doubt that he did not have a license to carry. We have addressed this issue on several occasions, and consistently reaffirmed "that under Massachusetts law, licensure is an affirmative defense, not an element of the crime." Commonwealth v. Norris, 462 Mass. at 145. See Commonwealth v. Gouse, 461 Mass. 787, 802-808 (2012); Commonwealth v. Powell, 459 Mass. 572, 582 (2011), cert. denied, 132 S. Ct. 1739 (2012) (affirming Powell v. Tompkins,

---

[10] The defendant makes two other arguments that we need not belabor given that we have ordered a new trial. First, the parties agree that the prosecutor misstated certain aspects of a witnesses' testimony in her closing argument. We conclude that these statements, though careless, did not impact the jury's verdict, and assume that the misstatements will be avoided at a retrial. Second, any improper appeal to sympathy intended by the testimony of the victim's family member did not "make plausible an inference that the [jury's] result might have been otherwise but for the error." Commonwealth v. Alphas, 430 Mass. 8, 13 (1999), quoting Commonwealth v. Miranda, 22 Mass. App. Ct. 10, 21 (1986).

supra at 335); Commonwealth v. Jones, 372 Mass. 403, 406 (1977). Accordingly, the defendant bore the burden of producing evidence that he held a license, and he failed to carry that burden. The Commonwealth was therefore not required to prove that he did not have a license, and the defendant was not entitled to a required finding of not guilty.

b. Second Amendment challenge. The defendant also contends that the firearms indictments should be dismissed because the statutes banning large capacity magazines violate the Second and Fourteenth Amendments to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights. In cases raising similar claims, we have held that a defendant may not challenge his convictions under G. L. c. 269, § 10 (h) (1), as unconstitutional under the Second Amendment where he has not otherwise made a showing that he has applied for (and was denied) a firearm identification card. See Powell, 459 Mass. at 589-590; Commonwealth v. Johnson, 461 Mass. 44, 58 (2011); Commonwealth v. Loadholt, 460 Mass. 723, 725 (2011). Those rulings apply in equal force to the defendant's case, and his challenges to the licensing statute accordingly fail.

For these reasons, we reverse the defendant's conviction of murder in the second degree and remand the matter for a new trial. His remaining convictions are affirmed.

So ordered.

GANTS, C.J. (dissenting).  The court reverses the defendant's conviction of murder in the second degree because it concludes that the following jury instruction "failed to adequately distinguish between 'justification and mitigation,'" ante at   , and "created a strong possibility that the jury believed" that they were precluded from finding the defendant guilty of manslaughter if they found that the defendant used excessive force in defense of another, ante at   :

> "[T]here is one additional way in which the Commonwealth may prove that the defendant did not act in lawful defense of another.  You will recall that I told you when I was explaining the legal concept of defense of another that a person may use no more force than is reasonably necessary in all of the circumstances to defend another person.  If a person uses unreasonable force or excessive force, then he is not acting in lawful defense of another.  Thus, if the Commonwealth proves that the defendant used excessive force in defending Shawn Buchanan, then it has proved that the defendant did not act in lawful defense of another.  However . . . excessive force in otherwise lawful defense of another is a mitigating circumstance, a mitigating circumstance that reduces the offense of murder to manslaughter."

I dissent because this instruction was not erroneous, and is consistent in substance with the Model Jury Instructions on Homicide approved by this court on March 21, 2013, approximately one year after this case was tried.

The judge's instructions made clear that the Commonwealth bore the burden of proving beyond a reasonable doubt that the defendant did not act in defense of another.  The judge properly instructed the jury that, where a defendant used deadly force in

defense of another, "the proper exercise of defense of another person" requires that: (1) the defendant actually believed that another person was in imminent danger of serious harm or death, (2) the defendant's belief was objectively reasonable, (3) "there was no other way to avoid the attack" except with deadly force, and (4) the use of deadly force was not excessive, that is, the defendant used "no more force than [was] reasonably necessary in all of the circumstances to defend another person." The judge also made clear that, because all four of these propositions are required for the proper exercise of defense of another, the Commonwealth may satisfy its burden of showing that the defendant did not act in "lawful defense of another" by proving beyond a reasonable doubt "any one of the following propositions":

(1) the defendant did not believe that Shawn Buchanan was in imminent danger of serious injury or death;

(2) if the defendant believed Buchanan was in such danger, the defendant's belief was not objectively reasonable;

(3) the defendant failed to avail himself of available alternatives before using deadly force; or

(4) the defendant used unreasonable or excessive force in defending Buchanan.

This is a correct statement of law. If the Commonwealth were to prove any of these four propositions beyond a reasonable

doubt, the defendant did not act in lawful defense of another, and therefore was not justified in using deadly force and may be found guilty of a crime, provided the elements of that crime are proven. See Commonwealth v. Young, 461 Mass. 198, 210 (2012) ("defense of another tracks the law of self-defense"); Commonwealth v. Glacken, 451 Mass. 163, 167 (2008) (describing Commonwealth's burden where there is evidence of self-defense). See also Model Jury Instructions on Homicide 33-35 (2013).

The judge also informed the jury that, if the Commonwealth proved beyond a reasonable doubt that the defendant used excessive force, then the defendant did not act in lawful defense of another but the jury "would be warranted in finding the defendant guilty of manslaughter."[1] The judge earlier had explained that "excessive force in otherwise lawful defense of another is a mitigating circumstance . . . that reduces the offense of murder to manslaughter."

These are correct statements of law. See Commonwealth v. Silva, 455 Mass. 503, 525-526 (2009) ("One of the elements of self-defense is the reasonableness of the force used to defend

---

[1] The judge misspoke here in that he told the jury that, if the Commonwealth were to prove beyond a reasonable doubt that "the defendant used excessive force in self-defense, then you would be warranted in finding the defendant guilty of manslaughter" (emphasis added). But where the judge had just told the jury to focus on the defendant's defense of Shawn Buchanan, not himself, there is no material risk that the jury were confused by this mistaken reference to self-defense.

oneself, and if the Commonwealth fails to disprove all the elements of self-defense except the element of reasonableness of the force used, i.e., that the defendant used excessive force in self-defense, then self-defense does not lie, but excessive force in self-defense will mitigate murder to voluntary manslaughter").  Where the Commonwealth proves beyond a reasonable doubt that a defendant used excessive force in defense of another, two separate legal consequences are triggered:  the defendant's claim that he was justified in using deadly force is defeated and therefore he is not entitled to an acquittal but, if the defendant was otherwise justified in defending another but for his excessive use of force, the crime of murder is mitigated to manslaughter.

Our current Model Jury Instructions on Homicide, which, as noted earlier, had not been approved when this case was tried, are structured differently from the judge's instructions in that the model instructions separate justification from mitigation, but the judge's instructions here are consistent with their substance.  Where there is evidence of self-defense (but no evidence that the defendant was the initial aggressor),[2] our model jury instructions provide in relevant part:

---

[2] Because our model homicide instruction regarding defense of another "is premised on the jury having earlier been instructed as to the law of self-defense," Model Jury

"A person is not guilty of any crime if he acted in proper self-defense. It is the Commonwealth's burden to prove beyond a reasonable doubt that the defendant did not act in proper self-defense. . . . If the Commonwealth fails to prove beyond a reasonable doubt that the defendant did not act in proper self-defense, then you must find the defendant not guilty.

". . .

"The Commonwealth satisfies its burden of proving that the defendant did not act in proper self-defense if it proves any one of the following four . . . propositions beyond a reasonable doubt:

"1. The defendant did not actually believe that he was in immediate danger of death or serious bodily harm from which he could save himself only by using deadly force. Deadly force is force that is intended or likely to cause death or serious bodily harm.

"2. A reasonable person in the same circumstances as the defendant would not reasonably have believed that he was in immediate danger of death or serious bodily harm from which he could save himself only by using deadly force.

"3. The defendant did not use or attempt to use all proper and reasonable means under the circumstances to avoid physical combat before resorting to the use of deadly force.

"4. The defendant used more force than was reasonably necessary under all the circumstances" (footnotes omitted).

Model Jury Instructions on Homicide 19-21 (2013).

Our model jury instructions separately discuss excessive use of force in self-defense or defense of another as a mitigating circumstance that the Commonwealth must negate beyond

Instructions on Homicide 32 (2013), it is simpler to refer to our instruction regarding self-defense than defense of another. See Commonwealth v. Young, 461 Mass. 198, 210 (2012).

a reasonable doubt to prove a defendant guilty of murder in the first or second degree. Our instructions provide, "A killing that would otherwise be murder in the first or second degree is reduced to the lesser offense of voluntary manslaughter if the defendant killed someone under mitigating circumstances." Id. at 42. In describing excessive use of force in self-defense or defense of another as a mitigating circumstance, our model jury instructions provide in relevant part:

> "As I have explained to you earlier, a person is not guilty of any crime if he acted in proper self-defense [or defense of another]. The Commonwealth must prove beyond a reasonable doubt that the defendant did not act in the proper exercise of self-defense [or defense of another]. If the Commonwealth fails to do so, then you must find the defendant not guilty because [with the exception of felony-murder] an element of the crime that the Commonwealth must prove beyond a reasonable doubt is that the defendant did not act in the proper exercise of self-defense [or defense of another].

> "In this case, you must consider whether the defendant used excessive force in defending himself [or another]. The term excessive force in self-defense means that, considering all the circumstances, the defendant used more force than was reasonably necessary to defend himself [or another]. . . .

> "I have already told you that to prove the defendant guilty of murder, the Commonwealth is required to prove beyond a reasonable doubt that the defendant did not act in the proper exercise of self-defense [or the defense of another]. If the Commonwealth proves that the defendant did not act in proper self-defense [or in the proper defense of another] solely because the defendant used more force than was reasonably necessary, then the Commonwealth has not proved that the defendant committed the crime of murder but, if the Commonwealth has proved the other required elements, you shall find the defendant guilty of voluntary manslaughter" (footnotes omitted).

Id. at 69-71.

To be sure, our model jury instructions regarding excessive use of force in defense of another are clearer than the judge's instructions regarding this issue, but the judge did not have the benefit of those instructions when this case was tried and his instructions are consistent with them. The judge's instructions are also consistent with the Model Jury Instructions on Homicide that were in effect at the time of trial, which were no clearer than the judge's instructions.[3] If the jury were confused by this instruction, they could have listened to the recording of the instructions provided to them by the judge (with the tape recorder made available to them), or

---

[3] The Model Jury Instructions on Homicide in effect at the time of trial declared, "A homicide is excused and is therefore not a crime if it results from the proper exercise of self-defense." Model Jury Instructions on Homicide 55 (1999). In describing the law of self-defense, the model jury instructions later provided, "A person may use no more force than is reasonably necessary in all of the circumstances to defend himself." Id. at 57. Separately, the model jury instructions provided:

> "The Commonwealth has the burden of proving beyond a reasonable doubt the absence of self-defense. If the Commonwealth fails to prove beyond a reasonable doubt the absence of self-defense, your verdict must be not guilty with respect to the crimes of murder or voluntary manslaughter. If, however, the Commonwealth does prove excessive force in an effort to defend oneself, you would be justified in finding the defendant guilty of voluntary manslaughter."

Id. at 30.

they could have sought clarification through a jury question (none were asked).

Having chaired the committee that redrafted the Model Jury Instructions on Homicide, I can attest that it is very difficult to explain clearly to a jury that a defendant does not act in lawful defense of another where he uses excessive force, but if the use of excessive force is the <u>only</u> reason why the killing was not lawful, the defendant is guilty of voluntary manslaughter, not murder in the first or second degree, provided the elements of that offense have been proven.  The judge's instructions regarding this challenging issue were not a model of clarity, but they were not erroneous.  Nor were they so confusing that a reasonable jury could not understand them. Nor, where the judge explicitly told the jury that "<u>excessive force in otherwise lawful defense of another is a mitigating circumstance</u>, a mitigating circumstance that reduces the offense of murder to manslaughter" (emphasis added), can it reasonably be said that these instructions "created a strong possibility" that the jury believed that they were precluded from finding the defendant guilty of manslaughter if they believed that the defendant used excessive force in defense of another.  <u>Ante</u> at    .  For these reasons, I would not reverse this conviction because of those instructions.