NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12607

COMMONWEALTH  vs.  BRIAN K. HARRIS.


Middlesex.     November 5, 2018. - March 29, 2019.

Present:  Gants, C.J., Gaziano, Lowy, Budd, Cypher, & Kafker,
JJ.


Firearms.  License.  Constitutional Law, Right to bear arms,
     Right to travel.  Practice, Criminal, Instructions to jury,
     Conduct of prosecutor.



     Complaint received and sworn to in the Lowell Division of
the District Court Department on May 1, 2017.

     A motion to dismiss was heard by Barbara Savitt Pearson,
J., and the cases were tried before James W. Coffey, J.

     The Supreme Judicial Court granted an application for
direct appellate review.


     Christopher DeMayo for the defendant.
     Ashlee R. Mastrangelo, Assistant District Attorney (Melissa
Weisgold Johnsen, Assistant District Attorney, also present) for
the Commonwealth.
     Maura Healey, Attorney General, & Thomas E. Bocian,
Assistant Attorney General, for the Attorney General, amicus
curiae, submitted a brief.


     GAZIANO, J.  This case concerns challenges to the firearms

licensing statute by the defendant, a firearm owner licensed to carry firearms in New Hampshire, who moved to the Commonwealth and did not obtain a Massachusetts firearm license within the sixty-day statutory time period for new residents.

Upon his return from a brief visit to New Hampshire, the defendant, who was intoxicated, got into a confrontation with his girlfriend in the early morning hours of September 12, 2015; she fled the apartment and called police. Officers returned with her to the apartment and spoke with the defendant, who agreed that he owned a Glock 43 pistol, and told them that it was in the trunk of his vehicle. Officers retrieved the weapon for "safekeeping" and kept the defendant overnight at the police station for his own safety after they determined he was too intoxicated to drive.

The defendant was not arrested, but two criminal complaints subsequently issued from the District Court charging him with unlawful possession of a firearm in violation of G. L. c. 269, § 10 (h) (1); unlawful possession of ammunition in violation of G. L. c. 269, § 10 (h) (1); and unlawful possession of a firearm in violation of G. L. c. 269, § 10 (a).[1]  A District Court jury

---

[1] Initially, the defendant also was charged with unlawful possession of a large capacity weapon or large capacity feeding device, in violation of G. L. c. 269, § 10 (m). The Commonwealth did not proceed to trial on that charge. In addition, the Commonwealth entered nolle prosequi with respect to the charge of unlawful possession of a firearm in violation

convicted the defendant on all charges.  He appealed, and we allowed his application for direct appellate review.

The defendant challenges the denial of his motion to dismiss the complaint charging unlawful possession of a firearm in violation of G. L. c. 269, § 10 (a), on constitutional grounds.[2]  In the alternative, he requests a new trial on the grounds of asserted errors in the jury instructions and purported prejudice as a result of assertedly improper questioning of a witness by the prosecutor.  We affirm.[3]

Discussion.  1.  Motion to dismiss.  a.  Factual background.  The limited facts before the judge were drawn predominantly from a police report submitted as an exhibit to the defendant's motion to dismiss.

In January 2015, Patty[4] and the defendant started dating.  At the time, Patty was living in an apartment in Tewksbury.  In late May 2015, the defendant moved into Patty's apartment.

---

of G. L. c. 269, § 10 (h) (1).  The conviction of unlawful possession of ammunition in violation of G. L. c. 269, § 10 (h) (1), was placed on file, and the defendant was sentenced to the mandatory minimum sentence of eighteen months' incarceration for unlawful possession of a firearm in violation of G. L. c. 269, § 10 (a).

[2] The defendant did not appeal from his other convictions.

[3] We acknowledge the amicus brief submitted by the Attorney General.

[4] A pseudonym.

On June 4, 2015, Patty and the defendant removed some of her belongings from the apartment to make room for the defendant's belongings. That night, the defendant woke Patty by yelling. He pushed her across the room and pinned her to a wall. The defendant had found a photograph of Patty's former boyfriend. The defendant said that he would "mutilate" the former boyfriend "in front of [Patty] . . . or worse." He also said that he would "assassinate anyone [he] want[ed] anytime [he] want[ed]," and told Patty that he was "the most brutal person [she] will meet." The defendant counted rounds of ammunition and identified jackets he would wear at his victims' funerals.

On September 11, 2015, the defendant and Patty were in the Tewksbury apartment. They had a verbal argument about Patty's work schedule, during which the defendant was verbally abusive. He went to the bedroom closet, where he retrieved a weapon that Patty identified as his "Glock." There was no indication that the firearm was loaded, but Patty also saw ammunition.

The defendant removed articles of his clothing from the closet; packed them, with the Glock, in a backpack; and left the apartment. The defendant planned to "stay in New Hampshire for the night." The defendant did not end up staying in New Hampshire. Rather, at approximately 1 A.M. on September 12, 2015, "after drinking," he came home to Tewksbury. He was

intoxicated. Patty was asleep and did not hear the defendant enter the apartment.

The defendant "threw on the lights and pulled the blankets off" Patty. He became enraged when she told him that "he was drunk" and that she "wanted nothing to do with him in [that] state." He began throwing items around and "trashing the apartment," while yelling at Patty and using obscene language.

Thinking about the Glock and the defendant's earlier actions, Patty became fearful for her safety. In an attempt to calm the defendant, Patty called his father, but this resulted in the defendant becoming yet more enraged. Patty grabbed her dog and keys, and called police as she fled the apartment; the defendant ran after her. After Patty got into her vehicle, the defendant "banged on" its exterior. Patty drove to a prearranged location, where she waited for the police.

At approximately 1:30 A.M., multiple uniformed officers responded in marked cruisers. Patty informed them that she was unsure if the defendant "had the Glock in [his] vehicle or in his possession," and consented to a protective sweep of the apartment.

The officers formed a contact team and entered the apartment building. An officer used a cellular telephone to call the defendant, and requested that he step outside. The defendant complied. He said that he "had gone out drinking"

before "coming home" to Tewksbury. He also acknowledged that he did not have a Massachusetts firearm license. Instead, he produced a New Hampshire firearm license. The defendant said that he had a Glock 43 (a nine millimeter pistol) in the trunk of his vehicle. He consented to a search of the vehicle, during which officers located the firearm and ammunition.

At the scene, Patty requested an emergency protection order under G. L. c. 209A. A judge issued the order, which was served on the defendant. Pursuant to the order, officers confiscated the defendant's firearm and ammunition for safe keeping. While they were doing so, the defendant commented that he "had connections" and would regain possession of the Glock. He also said that the protection order "won't stick." The defendant was not arrested. Rather, he was placed in protective custody when, after he failed multiple sobriety tests, officers determined that he would be unable to drive safely from the scene.

As a result of the restraining order, the Atkinson, New Hampshire, police chief revoked the defendant's New Hampshire firearm license.

Criminal complaints against the defendant ultimately were filed; he moved to dismiss the complaints. At a hearing on the motion, the defendant asserted an affirmative defense predicated on his by-then-revoked New Hampshire firearm license. In addition, he maintained that he was a New Hampshire resident who

had been traveling "in or through the Commonwealth" at the time of the domestic dispute.  The judge noted, however, that the defendant's residency status was a disputed issue of fact that could not be decided on a motion to dismiss.  The judge denied the defendant's motion and found probable cause to believe the defendant was a resident of the Commonwealth and had been living with Patty in Tewksbury while unlawfully possessing a firearm. We discern no error in the judge's decision.

b.  Massachusetts firearm license.  In his motion to dismiss, the defendant raised both facial and as-applied challenges to the constitutionality of G. L. c. 269, § 10 (a). On appeal, he pursues only a facial challenge, and that only summarily.[5]

"A facial challenge is an attack on a statute itself as opposed to a particular application."  Los Angeles v. Patel, 135 S. Ct. 2443, 2449 (2015).  "Facial challenges are disfavored"

---

[5] Often, as here, those who do not apply for a Massachusetts firearm license are not entitled to assert as-applied challenges to the licensing laws because they cannot demonstrate that they sought, and were denied, a Massachusetts firearm license.  See Commonwealth v. Johnson, 461 Mass. 44, 58 (2011).  The defendant gave no indication that he had applied for a Massachusetts firearm license.  Nor has he argued that applying for a license would have been futile.  See Hamilton v. Pallozzi, 848 F.3d 614, 620-621 (4th Cir.), cert. denied, 138 S. Ct. 500 (2017). Therefore, he would not have been able to proceed on an as-applied challenge.  See Commonwealth v. Cassidy, 479 Mass. 527, 539 n.10, cert. denied, 139 S. Ct. 276 (2018); Commonwealth v. Allen, 474 Mass. 162, 174 (2016); Commonwealth v. Powell, 459 Mass. 572, 590 (2011), cert. denied, 565 U.S. 1262 (2012).

because they "run contrary to the fundamental principle of judicial restraint" and "threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution" (citation omitted). See Washington State Grange v. Washington State Republican Party, 552 U.S. 442, 450-451 (2008). See also Hightower v. Boston, 693 F.3d 61, 76-77 (1st Cir. 2012). A facial challenge fails when the statute at issue has a "plainly legitimate sweep" (citation omitted). Washington State Grange, supra at 449.

General Laws c. 269, § 10 (a), provides for punishment of any individual who, "except as provided or exempted by statute, knowingly has in his possession; or knowingly has under his control in a vehicle; a firearm, loaded or unloaded."

The statute defines a number of categories of persons who are "exempted by statute" from punishment under G. L. c. 269, § 10 (a). Exemptions apply to new residents of the Commonwealth, see G. L. c. 140, § 129C (j); holders of a Massachusetts firearm license, see G. L. c. 140, §§ 131 (a), (b), 131F; holders of certain firearm licenses issued by other jurisdictions, see G. L. c. 140, §§ 129C (u), 131G; those with firearm identification (FID) cards who possess firearms in their residences or places of business, see G. L. c. 269, § 10 (a) (1); G. L. c. 140, § 129C; and certain nonresidents

traveling in or through the Commonwealth, see G. L. c. 140, §§ 129C (h), 131F, 131G. In addition, exemptions exist for specific types of firearms, certain persons, and specified uses.[6]

The defendant contends that the statutory exemption for an individual who possesses a Massachusetts firearm license, see G. L. c. 140, §§ 131 (a), (b), 131F; G. L. c. 269, § 10 (a) (2), (3), on its face violates Federal due process protections and rights under the Second Amendment to the United States Constitution, because, to invoke the exemption, a defendant must proffer evidence of a Massachusetts firearm license. The defendant argues that the initial burden of production as to a license, or lack thereof, should rest on the Commonwealth because "lack of a license" is an element of G. L. c. 269, § 10 (a), rather than an affirmative defense to the offense. On this basis, the defendant asks this court to reverse the denial of his motion to dismiss and, accordingly, his conviction under G. L. c. 269, § 10 (a).

This court previously has rejected similar arguments. We have long held that possession of a Massachusetts firearm license is an affirmative defense to G. L. c. 269, § 10 (a), and not an element of that offense. See Commonwealth v. Allen, 474 Mass. 162, 174 (2016); Commonwealth v. Gouse, 461 Mass. 787,

---

[6] See G. L. c. 140, §§ 121, 129C (a)-(u), 131, 131F, 131G; G. L. c. 269, § 10 (a) (1)-(4).

803-805 (2012); Commonwealth v. Powell, 459 Mass. 572, 582

(2011), cert. denied, 565 U.S. 1262 (2012).  Because it is an

affirmative defense, a defendant has the initial burden of

production as to possession of a Massachusetts firearm license.

See Gouse, supra at 802.  "If such evidence is presented,

however, the burden is on the prosecution to persuade the trier

of facts beyond a reasonable doubt that the defense does not

exist" (citation omitted).  Id.  See G. L. c. 278, § 7.[7]  This

system comports with due process, Commonwealth v. Jefferson, 461

Mass. 821, 834-835 (2012), and the Second Amendment.  See

Commonwealth v. Eberhart, 461 Mass. 809, 813 (2012); Gouse,

supra at 801; Commonwealth v. Loadholt, 460 Mass. 723, 727

(2011).

     Moreover, the defendant's argument cannot redress his

grievance, i.e., the denial of his motion to dismiss.  As noted,

he argues that "the prosecution must prove non-licensure" as an

element of G. L. c. 269, § 10 (a).  It was undisputed, however,

---

[7] In relevant part, G. L. c. 278, § 7, states that "[a]
defendant in a criminal prosecution, relying for his
justification upon a license . . . shall prove the same; and,
until so proved, the presumption shall be that he is not so
authorized."  This court has said that "[a]lthough the language
of § 7 suggests that the defendant must shoulder the entire
burden of proof (i.e., the burden of production and the burden
of persuasion) as discussed, we have interpreted it only to
impose the burden of production on the defendant, maintaining
the ultimate burden of disproving a properly raised affirmative
defense on the prosecution."  Commonwealth v. Gouse, 461 Mass.
787, 807 (2012).

that the defendant lacked a Massachusetts firearm license.  He told police that he did not have a Massachusetts firearm license, and agreed in his memorandum in support of his motion to dismiss, as well as at the hearing on that motion, that he lacked such a license.  In his appellate brief, the defendant asserts that he "did not have a Massachusetts firearms license." Therefore, even if licensure were an element of G. L. c. 269, § 10 (a), there was no doubt that the defendant lacked a Massachusetts firearm license.  The judge did not err in denying the motion to dismiss.

c.  <u>Traveling in or through the Commonwealth</u>.  General Laws c. 140, § 129C (h), establishes a statutory exemption that may be raised as an affirmative defense to an alleged violation of G. L. c. 269, § 10.  See G. L. c. 269, § 10 (a) (4).  Under G. L. c. 140, § 129C (h), nonresidents may travel "in or through the commonwealth" while in "[p]ossession of rifles and shotguns and ammunition," provided that the "rifles or shotguns are unloaded and enclosed in a case."

In his memorandum in support of his motion to dismiss, and at the motion hearing, the defendant argued that he was a resident of New Hampshire who "fit[] precisely within the class of exempted persons . . . set forth" in G. L. c. 140, § 129C (h).  The judge determined, however, that there was no probable cause to believe that the defendant was traveling in or

through the Commonwealth.  Rather, she found probable cause to believe that the defendant was living in the Commonwealth with his girlfriend.[8]

On appeal, the defendant adopts a new and different argument.  He contends that G. L. c. 269, § 10 (a), and G. L. c. 140, § 129C (h), are facially unconstitutional because, taken together, they violate the right to interstate travel, the right to equal protection, and rights guaranteed by the Second Amendment, as they prohibit a nonresident from traveling in or through the Commonwealth with a handgun, unless the nonresident first obtains a Massachusetts firearm license.  Therefore, the defendant argues, the judge erred in denying the motion to dismiss.

The defendant's arguments are unavailing.  On appeal, he does not explain how G. L. c. 269, § 10 (a), and G. L. c. 140, § 129C (h), act together to prohibit nonresidents from traveling with handguns in or through the Commonwealth.  As indicated, he provided no such explanation below.  Nor does he address on appeal the language of G. L. c. 140, § 131G, under which a nonresident of Massachusetts, who is a resident of the United

_____

[8] As discussed, G. L. c. 140, § 129C (h), exempts nonresidents who are traveling in or through the Commonwealth with rifles and shotguns.  There is no indication that the defendant ever possessed a rifle or a shotgun in the Commonwealth.  Accordingly, G. L. c. 140, § 129C (h), is inapplicable to these facts.

States, and who possesses a firearm permit or license issued by a jurisdiction that prohibits licensure of felons and those convicted of certain narcotics offenses, "may carry a pistol or revolver in or through" Massachusetts for a number of purposes. In any event, because the defendant did not raise this argument below, it is waived.  See Mass. R. Crim. P. 13 (a) (2), as appearing in 442 Mass. 1516 (2004).  See also Commonwealth v. Alexis, 481 Mass. 91, 101 (2018); Commonwealth v. Bettencourt, 447 Mass. 631, 633 (2006).

d.  New Hampshire firearm license.  The defendant argues that, at the time police took the Glock for "safekeeping," he possessed a valid New Hampshire firearm license that allowed him to carry firearms in the Commonwealth notwithstanding any Massachusetts firearms provisions.  The United States Supreme Court has said, however, that the full faith and credit clause[9] "does not compel a state to substitute the statutes of other states for its own statutes dealing with a subject matter concerning which it is competent to legislate" (quotation and citation omitted).  Baker v. General Motors Corp., 522 U.S. 222, 232 (1998).  In our Federal system, "each state is permitted to

---

[9] Article IV, § 1, of the United States Constitution states, "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State.  And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof."

create its own laws so long as they do not run afoul of the Constitution, federal laws, and treaties."  Hamilton v. Pallozzi, 848 F.3d 614, 628 (4th Cir.), cert. denied, 138 S. Ct. 500 (2017).  See art. VI, cl. 2, of the United States Constitution.

At the time police discovered the defendant's firearm, a New Hampshire statute allowed a New Hampshire licensee to "carry a loaded pistol or revolver in [that] state."[10]  See N.H. Rev. Stat. Ann. § 159:6.  Although the Commonwealth afforded exceptions to nonresidents who possessed certain firearm and hunting licenses issued by other jurisdictions, see G. L. c. 140, §§ 129C (f), 131G, and allowed nonresidents to obtain temporary firearm licenses, see G. L. c. 140, § 131F, no statute in the Commonwealth granted full reciprocity to holders of New Hampshire firearm licenses.  Similarly, when New Hampshire's licensing requirement was in effect, the statute did not provide reciprocity to holders of Massachusetts firearm licenses.  See N.H. Rev. Stat. Ann. § 159:6-d.

The privilege to conceal and carry a loaded pistol or revolver that was conferred by New Hampshire's firearm licensing

_____

[10] In 2017, New Hampshire repealed its licensure requirement, see 2017 N.H. Laws § 1:1, effective Feb. 22, 2017; this allowed its residents to conceal and carry loaded pistols and revolvers in New Hampshire without a license.  See N.H. Rev. Stat. Ann. § 159:6.III.

statute, N.H. Rev. Stat. Ann. § 159:6, is conferred in the Commonwealth through a "Class A" license, the issuance of which is subject to limitations for certain classes of persons, such as convicted felons, substance abusers, and the mentally ill. See G. L. c. 140, § 131 (a), (d).[11] See, e.g., <u>Chief of Police of Worcester</u> v. <u>Holden</u>, 470 Mass. 845, 853 (2015); <u>Jefferson</u>, 461 Mass. at 830; <u>Loadholt</u>, 460 Mass. at 726 & n.6. A New Hampshire firearm license was available to any "suitable person." See N.H. Rev. Stat. Ann. § 159:6(I)(a).

Ultimately, this matter concerns different jurisdictions making differing determinations about firearm licensing and regulation. See <u>Hamilton</u>, 848 F.3d at 628 & n.15. The Commonwealth is not required to substitute its statutes for those of New Hampshire. See <u>Pacific Employers Ins. Co</u>. v. <u>Industrial Acc. Comm'n of Cal</u>., 306 U.S. 493, 502 (1939) ("the conclusion is unavoidable that the full faith and credit clause does not require one state to substitute for its own statute, applicable to persons and events within it, the conflicting

---

[11] We note that Federal law contemplates similar restrictions on the possession and transport of firearms. See 18 U.S.C. § 922(g) ("It shall be unlawful for" felons, fugitives, users or addicts of controlled substances, those with mental illness, aliens, dishonorably discharged service members, those subject to protection orders, and those convicted of domestic violence to "possess" or "transport" interstate "any firearm or ammunition"). See also <u>District of Columbia</u> v. <u>Heller</u>, 554 U.S. 570, 626-627 (2008).

statute of another state").

The judge who denied the defendant's motion to dismiss found probable cause to believe that the defendant had been living in Massachusetts when police became aware of his firearm. The facts available indicated that, at that point, the defendant had been a resident of Massachusetts for several months.

Under Massachusetts requirements, a "new resident moving into the commonwealth, with respect to any firearm . . . then in his [or her] possession," may lawfully possess such firearms "for [sixty] days," G. L. c. 140, § 129C (j), after which he or she must obtain a Massachusetts firearm license in order to possess the firearm outside the home or place of business.[12]  See

---

[12] In Commonwealth v. Wood, 398 Mass. 135, 137 (1986), this court addressed whether G. L. c. 140, § 129C (j), served as an exemption to the version of G. L. c. 269, § 10 (a), that was then in effect.  At that time, G. L. c. 269, § 10 (a), punished those who "carrie[d]" firearms, and G. L. c. 140, § 129C (j), exempted those who "possesse[d]" firearms.  See Wood, supra; St. 1990, c. 511, §§ 2, 3.  Therefore, this court concluded that G. L. c. 140, § 129C (j), did not serve as an exemption to G. L. c. 269, § 10 (a).  See Wood, supra.  General Laws c. 269, § 10 (a), was amended in 1990, however, to prohibit the unlawful "possession" of a firearm.  See St. 1990, c. 511, §§ 2, 3.  The purpose of the amendment was to "regulate the possession of firearms . . . for the immediate preservation of the public welfare."  See St. 1990, c. 511.  The amendment remains applicable today.  See G. L. c. 269, § 10 (a).  Therefore, G. L. c. 140, § 129C (j), which applies to the possession of firearms, now serves as an exemption to G. L. c. 269, § 10 (a), which prohibits the unlawful possession of firearms.  See Commonwealth v. Cornelius, 78 Mass. App. Ct. 413, 419 (2010) ("by satisfying the exception set out in G. L. c. 140, § 129C[j], new residents . . . satisfy the firearm exemption set out in G. L. c. 269, § 10[a][4], for a limited period of time, without also

G. L. c. 140, § 131 (a), (b); G. L. c. 269, § 10 (a) (2). The defendant could have applied for a Massachusetts firearm license within the sixty-day period following his arrival in the Commonwealth, but during more than three months of residency, he chose not to do so. There was no error in the denial of the motion to dismiss.

2. New trial. In the alternative, the defendant seeks a new trial on the grounds of purportedly improper jury instructions[13] and the prosecutor's questioning of one of the witnesses.

a. Jury instructions. The defendant argues that a new trial is required because the judge denied his request for an instruction on 18 U.S.C. § 926A, as well as because the judge assertedly did not instruct on G. L. c. 269, § 10 (a) (1). This latter instruction was not requested at trial, but in fact was

---

complying with the provisions of G. L. c. 140, § 131G").

[13] The defendant also contends that the Commonwealth "misconstrued" the firearm-licensing statute during closing argument by addressing a statutory exemption that was available to a nonresident "passing through [the Commonwealth] with his firearm." The defendant did not object at trial. Thus, we review for a substantial risk of a miscarriage of justice. See Commonwealth v. Ferreira, 460 Mass. 781, 788 (2011). General Laws c. 140, §§ 131F and 131G, allow nonresidents of the Commonwealth to travel in or through Massachusetts with a pistol or revolver, provided several conditions are met. The judge instructed the jury as to both G. L. c. 140, §§ 131F and 131G. The Commonwealth's closing argument did not misconstrue the applicable statutory provisions. Therefore, the defendant's argument is without merit.

given by the judge.  The defendant contends further that the instructions deprived him of an affirmative defense under G. L. c. 140, § 129C (j), and potentially confused the jury.  The defendant did not object to the instructions at trial.

We evaluate the instructions provided to a jury "as a whole, looking for the interpretation a reasonable juror would place on the judge's words," and not in a hypermechanical manner (citation omitted).  See Commonwealth v. Vargas, 475 Mass. 338, 349 (2016).

i.  Interstate transportation of firearms.  Because the defendant requested an instruction with respect to 18 U.S.C. § 926A, and objected when the request was denied, we review for prejudicial error.[14]  See Commonwealth v. Okoro, 471 Mass. 51, 67 (2015).  Under that analysis, we determine, first, whether there was error and, if so, whether the error was prejudicial.  See Commonwealth v. Cruz, 445 Mass. 589, 591 (2005).  An error is not prejudicial when we can say with confidence that it "did not influence the jury, or had but very slight effect" (citation omitted).  Commonwealth v. Brown, 456 Mass. 708, 725 (2010).  On the other hand, if we are unable to say "with fair assurance," and "after pondering all that

_____

[14] The defendant argues also that 18 U.S.C. § 926A preempts the Massachusetts firearms statutes.  As the judge properly denied the request for an instruction on 18 U.S.C. § 926A, we need not reach this issue.  See 18 U.S.C. § 927.

happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error," then the error was prejudicial (citation omitted).  See Allen, 474 Mass. at 168.

Pursuant to 18 U.S.C. § 926A, any person who is not prohibited under Federal law from transporting, shipping, or receiving a firearm

> "shall be entitled to transport a firearm for any lawful purpose from any place where he may lawfully possess and carry such firearm to any other place where he may lawfully possess and carry such firearm if, during such transportation the firearm is unloaded, and neither the firearm nor any ammunition being transported is readily accessible or is directly accessible from the passenger compartment of such transporting vehicle."

The defendant maintains that 18 U.S.C. § 926A is applicable here because, at the time his firearm was discovered by Tewksbury police, he was a nonresident "in the midst of a trip" from Londonderry, New Hampshire, to Atkinson, New Hampshire, "by way of Tewksbury."  The defendant points to no authority supporting his interpretation of 18 U.S.C. § 926A, nor are we aware of any.

This provision consistently has been construed to "allow[] a person to transport a firearm and ammunition from one state through a second state to a third state, without regard to the second state's gun laws, provided that the traveler is licensed to carry a firearm in both the state of origin and the state of

destination and that the firearm is not readily accessible during the transportation." Revell v. Port Auth. of N.Y. & N.J., 598 F.3d 128, 132 (3d Cir. 2010), cert. denied, 562 U.S. 1178 (2011). See 18 U.S.C. § 926A; Torraco v. Port Auth. of N.Y. & N.J., 615 F.3d 129, 132 (2d Cir. 2010) (18 U.S.C. § 926A "allows individuals to transport firearms from one state in which they are legal, through another state in which they are illegal, to a third state in which they are legal, provided that several conditions are met"). See also Bieder v. United States, 662 A.2d 185, 188-189 (D.C. 1995) (where possession of firearm is lawful in Virginia and New York, 18 U.S.C. § 926A warrants instruction for defendant arrested in District of Columbia while driving from Virginia to New York).

We decline to depart from the accepted understanding of 18 U.S.C. § 926A. Therefore, we consider whether an instruction concerning that statute was warranted given the facts at trial. From the time he moved to Tewksbury in late May 2015, until September 12, 2015, the defendant possessed at least one handgun in the Tewksbury apartment. As a new resident of the Commonwealth, he was afforded sixty days in which to obtain a Massachusetts FID card or firearm license. See G. L. c. 140, § 129C (j); G. L. c. 269, § 10 (a) (4). There is no indication that the defendant did so, or attempted to do so, during this period.

On September 11, 2015, the defendant placed a handgun in a backpack and transported it from Tewksbury to a shooting range in New Hampshire.  He spent several hours at the range, and thereafter "had a couple beers."  After several hours of drinking beer, the defendant drove to Londonderry, New Hampshire, to deposit multiple firearms in a storage unit.  He then drove to Manchester, New Hampshire, where he dropped off a friend.  He returned to Tewksbury between 11:30 P.M. on September 11 and 1 A.M. on September 12.  Officers responded to the scene at approximately 1:30 A.M. on September 12 and later discovered the Glock in the trunk of the defendant's vehicle.

In sum, on the evening of September 11, 2015, the defendant began his journey in the Commonwealth, he sojourned in New Hampshire, and he returned to Massachusetts sometime late in the evening on September 11 or in the early morning hours of September 12.  He did not transport a firearm "from one state through a second state to a third state."  Revell, 598 F.3d at 132.  See Torraco, 615 F.3d at 132.  Moreover, because he had not obtained a Massachusetts FID card or firearm license within sixty days of moving to the Commonwealth, he was unable lawfully to possess firearms in the Commonwealth, and therefore was unable to transport firearms lawfully into or from the Commonwealth pursuant to 18 U.S.C. § 926A.  See Torraco, supra at 138 (because petitioners "began the pertinent legs of their

travels in New Jersey," under 18 U.S.C. § 926A, "possession and carriage of the firearms in that state needed to be lawful" in order for that statute to apply).

There was no error in the trial judge's decision that an instruction concerning the provisions of 18 U.S.C. § 926A was not warranted.

ii. Residence or place of business. The defendant argues for the first time on appeal that the judge erred in not instructing the jury to consider whether he had possessed the firearm outside his residence or place of business. The defendant did not request the instruction at trial, nor did he object. Therefore, we must determine whether there was a substantial risk of a miscarriage of justice. See Jefferson, 461 Mass. at 836. We conclude there was not.

General Laws c. 269, § 10 (a) (1), establishes a statutory exemption that allows an individual who has a Massachusetts FID card lawfully to possess a firearm in his or her residence or place of business. See Powell, 459 Mass. at 587-588 ("FID card allows the holder to own or possess a firearm within the holder's residence or place of business"). See also Commonwealth v. McGowan, 464 Mass. 232, 240-241 (2013). Thus, G. L. c. 269, § 10 (a) (1), is an affirmative defense. See, e.g., Commonwealth v. Anderson, 445 Mass. 195, 214 (2005). Although the defendant did not raise this defense, the judge, as

was proper, nonetheless instructed the jury that G. L. c. 269, § 10 (a) (1), "exempts a defendant . . . who was present in or on his or her residence or place of business."  The defendant is mistaken in his argument before this court that the judge did not instruct on this exemption.

In any event, the firearm was recovered from the defendant's vehicle, and, at trial, he argued consistently that he had no residence or place of business in the Commonwealth. The defendant, therefore, provided little basis for the judge to have instructed on G. L. c. 269, § 10 (a) (1).  Moreover, there was no indication that the defendant had applied for or obtained an FID card.  Absent such a card, the defendant could not have been acquitted under G. L. c. 269, § 10 (a) (1).  He suffered no prejudice.

iii.  Sixty-day grace period and temporary licenses.  The defendant argues that the jury instruction with respect to G. L. c. 140, § 129C (j), deprived him of a "potential" defense under that provision.  In addition, he argues that a portion of the instruction might have confused the jury concerning temporary Massachusetts firearm licenses that are issued under G. L. c. 140, § 131F.  Because the defendant did not object at trial, we review for a substantial risk of a miscarriage of justice. See Jefferson, 461 Mass. at 836.

Because the defendant did not have a Massachusetts firearm

license, the central issue at trial was whether he was living in Massachusetts on September 12, 2015, and, if so, for how long prior to that date. The Commonwealth's theory was that the defendant lived in Massachusetts from late May 2015 through September 12, 2015, a period of more than sixty days. The defendant maintained that he had never lived in Massachusetts.

A number of provisions of the Massachusetts firearm licensing scheme create exceptions for new residents and nonresidents. The judge properly instructed the jury on them.

As discussed, for example, G. L. c. 140, § 129C (j), provides a sixty-day period during which a new resident of the Commonwealth who arrives in Massachusetts with firearms may possess those firearms without a Massachusetts FID card or firearm license. See G. L. c. 269, § 10 (a) (4). In his charge, the judge explained that G. L. c. 140, § 129C (j), exempted any "new resident moving into the Commonwealth with respect to a firearm, rifle, shotgun, or ammunition then in his possession for [sixty] days after" moving to "the Commonwealth."

Because G. L. c. 269 does not define the term "resident," the judge instructed that a defendant "can only have one domicile under the law," but "can have lots of residences[,] so we use the [term] residence in its common everyday meaning and understanding that a person may have more than one residence at any one given time." The judge instructed further that, for the

purposes of G. L. c. 140, § 129C (j), the Commonwealth had the burden of proving beyond a reasonable doubt that the defendant had been a Massachusetts resident.

While the defendant did not request an instruction on G. L. c. 140, § 129C (j), the evidence suggested that he was a new resident of the Commonwealth.  Accordingly, the judge properly instructed the jury on that provision.  See Commonwealth v. Gonzalez, 465 Mass. 672, 682 (2013).  Relying on these instructions, had the jury found that the defendant was a resident of the Commonwealth on September 12, 2015, but that he had resided in Massachusetts for fewer than sixty days, they would have been required to acquit him.

In addition, the judge instructed that a nonresident who obtains a Massachusetts temporary firearm license pursuant to G. L. c. 140, § 131F, lawfully may carry firearms in the Commonwealth for specific purposes.  The judge also explained that, under G. L. c. 140, § 131G, a nonresident without a Massachusetts firearm license may carry

> "a pistol or revolver in or through the Commonwealth for the purpose of taking part in a pistol or revolver competition or attending any meeting or exhibition of any organized group of firearm collectors or for the purpose of hunting provided that such person is a resident of the United States and has a permit or license to carry firearms issued under the laws of any state, district, or territory which has licensing requirements which prohibit the issuance of permits or licenses to persons who have been convicted of a felony or who have been convicted of unlawful use or

possession or sale of narcotics or harmful drugs."

Given these instructions, had the jury found that the defendant was a nonresident when police discovered his firearm, and that he had acquired a temporary Massachusetts firearm license under G. L. c. 140, § 131F, or that he was traveling in or through Massachusetts to participate in a firearm competition, a firearm collectors' meeting or exhibition, or to hunt, they would have been obligated to acquit him.

In sum, the instructions encompassed exemptions under which the defendant could have been acquitted regardless of whether the jury found that he was a resident, as the Commonwealth asserted, or a nonresident, as he maintained.  The instructions accurately informed the jury of the elements of the offense, as well as the affirmative defenses.  They did not deprive the defendant of an affirmative defense under G. L. c. 140, § 129C (j), and were not likely to confuse the jury with respect to the exemption for nonresidents who possess Massachusetts temporary firearm licenses.  See G. L. c. 140, § 131F.  We conclude that the instructions did not create a substantial risk of a miscarriage of justice.

b.  Asserted prosecutorial misconduct.  The defendant contends that the Commonwealth caused him prejudice by asking Patty whether he "had something against Massachusetts."  Because the defendant did not object, we review for a substantial risk

of a miscarriage of justice.  See Commonwealth v. Ferreira, 460 Mass. 781, 788 (2011).

During cross-examination, defense counsel asked Patty whether the defendant told "just about everybody that he had no intention of ever living in Massachusetts," to which Patty responded, "I can't answer that in a yes or no without explanation."  On redirect, the Commonwealth probed the same issue; the prosecutor asked whether the defendant had told Patty that he "never wanted to live in Massachusetts," but nonetheless had moved into the Tewksbury apartment with her.  Patty answered in the affirmative.  The prosecutor then clarified, "So he had something against Massachusetts . . . [b]ut he found himself here anyway?"  To which Patty responded, "Correct."

Evidence "that otherwise may be inadmissible may become admissible where the defendant opens the door to its admission." Commonwealth v. Quinn, 469 Mass. 641, 732-733 (2014).  Here, "defense counsel invited a fuller explanation" of Patty's testimony, see Commonwealth v. McCowen, 458 Mass. 461, 479 (2010), and the prosecutor was permitted to respond.  See id.

The defendant's dislike of Massachusetts was a cornerstone of his defense strategy.  On direct examination of the defendant's uncle, counsel asked, "[H]as [the defendant] ever expressed any statement about living in Massachusetts?"  The uncle responded, "He dislikes Massachusetts."  Later, the

defendant himself testified, "I'm not good with [Massachusetts] gun laws. . . . I just don't like -- I don't like it down here basically." Given this, the question that the prosecutor posed to Patty did not create a substantial risk of a miscarriage of justice.

<u>Judgment affirmed</u>.