NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

24-P-161                                          Appeals Court

COMMONWEALTH  vs.  REMI M. JONES.

No. 24-P-161.

Suffolk.     March 3, 2025. – March 27, 2026.

Present:  Henry, Shin, & Brennan, JJ.


Firearms.  License.  Evidence, Firearm, Hearsay, Videotape.
    Practice, Civil, Hearsay.  Practice, Criminal, Required
    finding.


Indictment found and returned in the Superior Court
Department on September 22, 2021.

The case was tried before Kathleen McCarthy-Neyman, J.


Andrew P. Power for the defendant.
Ian MacLean, Assistant District Attorney, for the
Commonwealth.


HENRY, J.  In this appeal from the defendant's conviction

of unlawful possession of a firearm without a license, in

violation of G. L. c. 269, § 10 (a), the main issue concerns the

admissibility of nonlicensure.  Specifically, the defendant

challenges the admissibility of the testimony of an employee of

the Department of Criminal Justice Information Services (DCJIS) that the defendant was not licensed to carry a firearm in the Commonwealth, on the ground, among others, that the employee failed to perform a diligent search of the DCJIS-maintained Statewide database of firearm licenses (firearm license database or database). The defendant also challenges the admissibility of an exhibit confirming the absence of a record in the database that he was licensed to carry a firearm. We conclude that the Commonwealth established the admissibility of the witness testimony and the exhibit. Because we also conclude that the evidence was sufficient for the jury to conclude that the defendant unlawfully possessed a firearm without a license to carry a firearm, we affirm the defendant's conviction.[1]

Background. In light of the nature of the defendant's appellate arguments, we recite the factual background only in summary form, reserving detail for later discussion of his arguments on admissibility and sufficiency.

The events in question were captured on surveillance video footage on March 7, 2021, except to the extent that some of the action moved out of range of the cameras. Brothers Evel and Jean Almonte and their mother, Jacqueline Estevez de Almonte, were involved in an altercation with the defendant and another

---

[1] The defendant does not challenge his conviction of assault and battery, in violation of G. L. c. 265, § 13A (a).

man in East Boston.[2]  After a man fighting with Evel and Jean

dropped an object wrapped in a sock, the mother picked up the

sock.  The object was a gun.  The defendant, in an unsuccessful

effort to retrieve the gun, chased and fought with the mother.

After the events in question, the defendant was arrested and

charged with several crimes.  Following a jury trial in the

Superior Court, the defendant was convicted of unlawful

possession of a firearm without a license and assault and

battery.

Discussion.[3]  "General Laws c. 269, § 10 (a), makes it an

offense to knowingly possess a firearm outside of one's

---

[2] Because the family members share the same last name, we refer to them by their first names to avoid confusion.

[3] The defendant's argument that the firearm licensing regime in effect at the time of the offense, March 7, 2021, was facially unconstitutional was rejected by the Supreme Judicial Court in Commonwealth v. Rodriguez, 496 Mass. 627, 639 (2025). In Rodriguez, the court concluded that this same former version of the resident firearm licensing scheme was not facially unconstitutional because "at least 'some of its applications' were constitutional." Id. at 642, quoting United States v. Rahimi, 602 U.S. 680, 693 (2024).  See G. L. c. 140, § 131 (d), as amended through St. 2018, c. 123, §§ 11, 12; G. L. c. 269, § 10 (a) (2), as amended through St. 2014, c. 284, § 90.

Insofar as the defendant may be arguing that the nonresident firearm licensing scheme at the time of the offense, G. L. c. 140, § 131F, as amended through St. 2014, c. 284, §§ 60, 63, was facially unconstitutional, his argument is misplaced.  The Supreme Judicial Court held in Rodriguez that the same version of the nonresident firearm licensing scheme was not facially unconstitutional.  See Rodriguez, 496 Mass. at 642 n.8 (abrogating Commonwealth v. Donnell, 495 Mass. 471, 479-483

residence or place of business without also having a license to carry a firearm" (quotations and citation omitted). Commonwealth v. Guardado, 491 Mass. 666, 682 (Guardado I), S.C., 493 Mass. 1 (2023), cert. denied, 144 S. Ct. 2683 (2024). To convict the defendant of unlawful carrying of a firearm, the Commonwealth is required to establish that the defendant possessed the firearm and that he did not have a license to carry a firearm. See Guardado I, supra at 690-692. We first address the defendant's challenges to the admissibility of evidence of nonlicensure and then address his challenges to the sufficiency of the evidence of (a) nonlicensure and (b) possession of a firearm.

1. Evidence presented of nonlicensure and its admissibility. The defendant challenges the admissibility of the following evidence that the Commonwealth submitted to establish that the defendant lacked a license to carry a firearm: (1) the testimony from DCJIS employee Amy[4] Conway, who

---

[2025] to extent it held that former version of nonresident firearm licensing scheme "was facially violative of the Second Amendment").

[4] As is our custom, we spell the witness's name as it appears in the transcript. The correct spelling, which is confirmed by exhibit 1 and a search of the Board of Bar Overseers attorney database, is Aimee. We recognize the irony of a misspelling of the name of the person testifying about her database search in a case that hinges on the witness entering the correct spelling of the defendant's name in her database search.

searched the firearm license database for the defendant's name and date of birth and testified that no record was found, and (2) a printout memorializing the search parameters Conway used and the search result that no record was found (printout or exhibit 1).

Before turning to the legal analysis, we summarize the evidence the Commonwealth presented on the issue of nonlicensure.  Conway testified that she was employed by the DCJIS as litigation and compliance counsel and that, prior to taking that role, she was an assistant district attorney for almost thirteen years.  She explained that the DCJIS is made up of multiple divisions, including the firearms record bureau, which issues the physical firearm license and enters information relevant to that license into an electronic database called the Massachusetts instant record check system (MIRCS).

Conway explained that after the firearms record bureau supplies a physical license to the licensing authority, "[t]he licensing authority physically provides it to the . . . licensee, and then activates the license in [the MIRCS] database."  This process ensures that every licensee is given the opportunity to make sure all of the identifying information entered into the firearm license database and listed on their license is accurate.

Information entered into the MIRCS is immediately replicated into the Criminal Justice Information Systems (CJIS) database, a separate database that law enforcement officers and agencies can access and search for purposes of carrying out their criminal justice responsibilities. Law enforcement officers can access specific information regarding firearms licensing histories and ownership records in the CJIS database through what is known as a "BOPFI"[5] search.

Conway further testified that, three days before trial, she conducted a BOPFI search consisting of the combination of the defendant's name "Remi Jones" and his correct date of birth (May 17, 1994), a fact subsequently established by testimony from a police officer.[6] The result of the search was "no records found." The Commonwealth introduced a printout, which Conway authenticated, that Conway described as memorializing the database query she entered and the corresponding result of "no records found" in the CJIS database.

---

[5] The acronym has not been used in our case law. The record does not reflect what "BOP," the first three letters of the acronym, signify. We presume they stand for "board of probation." Cf. Doherty v. Civil Serv. Comm'n, 486 Mass. 487, 488-489 (2020) (referencing board of probation checks). Conway testified that the "FI" in "BOPFI" stands for "firearms inquiry."

[6] Following Conway's testimony, a police officer testified that he stopped the defendant at the scene, the defendant's name was Remi Jones, and the defendant's date of birth was May 17, 1994.

The defendant challenges the admissibility of Conway's testimony and argues that the computer printout was inadmissible hearsay.

a. Conway's testimony. After briefing and oral argument in this case, the Supreme Judicial Court addressed in Commonwealth v. Smith, 496 Mass. 304 (2025), the foundation necessary to admit a witness's testimony that a search of the firearm license database turned up no record. For a witness "to be competent to testify that a search of the database returned no result . . . [i]t suffices that the witness be familiar with the process of searching the database and with the public record-keeping practices with respect to the database." Id. at 312. Conway's testimony met this standard. See id. at 310 (DCJIS employee's testimony that his "search of the Statewide firearm license database turned up no results was a 'practicable way' of proving that no one with that particular name and birth date had a firearm license" [quotation and citation omitted]). See also Commonwealth v. Meserve, 154 Mass. 64, 71 (1891) ("The only practicable way to prove that no deed appears of record is to show that an examination of the records discloses none"). Accordingly, "testimony that a search of public records did not turn up a record is admissible to prove the nonexistence of such a record." Smith, supra at 308.

Conway's testimony also did not violate the confrontation clause of the Sixth Amendment to the United States Constitution "because the records in DCJIS's Statewide firearm license database are not testimonial." Smith, 496 Mass. at 305. As the Supreme Judicial Court explained further in Smith, "because the contents of DCJIS's database were not created with the 'primary purpose' of creating evidence for use at trial, . . . [the DCJIS employee's] testimony regarding the result of [her] search of the database did not violate the defendant's right to confront the witnesses against him" (citations omitted). Id. at 315.

We next address the defendant's argument that the Commonwealth failed to establish that Conway conducted a "diligent" search of the firearm license database, and that as a result, the evidence provided by Conway was inadequate to prove nonlicensure. The Massachusetts Guide to Evidence, § 803(10) (2025), addresses testimony and written certifications introduced to prove the absence of a public record. See Mass. G. Evid. § 803(10) (2025). Section 803(10) advises that the admissibility of such evidence should be conditioned on a "diligent search" having been undertaken. Smith, 496 Mass. at 310, quoting Mass. G. Evid. § 803(10) ("[t]estimony . . . that a diligent search failed to disclose a public record or statement is admissible in evidence if the testimony or certification is offered to prove that [A] the record or statement does not

exist, or [B] a matter did not occur or exist, if a public office regularly kept a record or statement for a matter of that kind").  However, Smith did not address what would constitute a diligent search of a database.  See Smith, supra at 311 n.10.

Here, it is true that Conway did not expressly state that she undertook a diligent search of the database.  Nonetheless, the evidence established that Conway's search was one way to perform a diligent search, meaning that her search efforts would have found a Massachusetts firearms license if the defendant had one.  Conway testified that she used a two-parameter search of the database, using the defendant's name and date of birth.  Of course, the Commonwealth must establish in some way that the search was conducted using the defendant's correct information, Smith, 496 Mass. at 317-318, viz., the defendant's name and date of birth.  The Commonwealth established the defendant's date of birth through the testimony of a police officer who spoke to the defendant at the scene.  See note 6, supra.  And while Conway was not asked how she spelled the defendant's first and last names when she conducted the search, the printout memorialized the spellings that she used in the search, and they are the same as the spellings used in the indictments.  Exhibit 1 also documented the correct date of birth.  This portion of exhibit 1

confirming the search terms entered was admissible for that purpose.[7]

We reject the defendant's argument that the Commonwealth did not prove the search was diligent because Conway did not review the charging documents, arrest report, or booking form. The only relevant question was whether she searched the database for the defendant's name and correct date of birth. Also, the fact that it does not take a long time to search a database for a properly spelled name and a correctly entered date of birth does not nullify the diligence of the search.

The defendant also raises on appeal arguments that were not made at trial. We review those claims to determine whether there was error, and if so, whether such error created a substantial risk of a miscarriage of justice. See Commonwealth v. Rios, 96 Mass. App. Ct. 463, 474 (2019). The defendant argues that Conway's search could have produced a "false negative" because the indictment listed "Remi M. Jones." The defendant argues that a "query for 'Jones, Remi; date-of-birth: 5/17/1994' would have failed to retrieve records entered under

---

[7] The act of entering the defendant's name into the search parameters was not an assertion and thus was not hearsay. See Commonwealth v. Purdy, 459 Mass. 442, 452 (2011), quoting Mass. G. Evid. § 801(c), at 233 (2011) ("[W]hen out-of-court statements are offered for a reason other than to prove the truth of the matter asserted or when they have independent legal significance, they are not hearsay").

the combination 'Jones, Remi M.; date-of-birth: 5/17/1994.'"
This was a matter for cross-examination, and it was not raised
at trial. We do not discern a substantial risk of a miscarriage
of justice.[8] Rios, supra.

The defendant also argues for the first time on appeal that
Conway did not determine whether the defendant was a nonresident
who did not have a Massachusetts firearms license, but who did
have a permit or license under the laws of another State. This
argument was briefed only cursorily and relies on outdated law.[9]
We understand the defendant to mean that the Commonwealth did
not prove that he did not fall within an exemption to license
requirements for nonresidents. It is correct that the
Commonwealth did not establish the defendant's residence.
Nonetheless, we discern no substantial risk of a miscarriage of
justice because "[w]e treat the existence of a statutory

---

[8] We note, however, that in Smith, the Commonwealth provided
more robust testimony on the reliability of a DCJIS employee's
search for a name in the CJIS database. See Smith, 496 Mass. at
307 (DCJIS employee testified that CJIS database "uses a
'Soundex' search method for names that allows some room for
error in misspelling a person's name"). Such testimony was not
offered in this case.

[9] In support of this argument, the defendant cites to
Commonwealth v. Harris, 481 Mass. 767, 781-782 (2019), and
G. L. c. 140, § 131G. The Supreme Judicial Court recognized in
Commonwealth v. Crowder, 495 Mass. 552, 562, cert. denied, 146
S. Ct. 169 (2025), that Harris was abrogated on other grounds.
And G. L. c. 140, § 131G, was repealed in 2024. See St. 2024,
c. 135, § 64.

exemption as equivalent to an affirmative defense" (citation omitted). Guardado I, 491 Mass. at 682. See Commonwealth v. Anderson, 445 Mass. 195, 214 (2005) ("statutory exemption for the charge of illegally possessing a firearm . . . is an affirmative defense"). "While the Commonwealth carries the burden of proving each element of a charged crime, it has no burden of disproving an affirmative defense unless and until there is evidence supporting such defense" (quotation and citation omitted). Guardado I, supra.

It is worth noting that we reject the Commonwealth's argument that Conway's single search for both the defendant's name and date of birth was more diligent than conducting two separate searches for each parameter. In proving the absence of a record, performing a single search for two parameters may be less diligent than performing two separate, one-parameter searches (e.g., one for the name and one for the date of birth) because a single, two-parameter search requires a match of two parameters to yield a record.[10] In other words, if there is a typographical error in either parameter of a two-parameter

---

[10] In Smith, the Supreme Judicial Court held that searching the name and date of birth, if both are in the record, is "a practicable way of proving that no one with that particular name and birth date had a firearm license" (emphasis added; quotation and citation omitted). Smith, 496 Mass. at 310. The court did not say in Smith that one search using the defendant's name and date of birth was the only way to prove lack of licensure.

search, the single search will yield no record. See Smith, 496 Mass. at 317 (DCJIS employee "testified that, even if a person does have a firearm license, a search for that person's name will return no result if the person's birth date is entered incorrectly"). In contrast, conducting two separate, one-parameter searches for the information will yield a record, if one exists, so long as at least one of the parameters is entered correctly.[11] In any event, here, the Commonwealth proved that Conway entered both the name and date of birth correctly.

In sum, the Commonwealth established that Conway's search was diligent. Thus, it was within the trial judge's discretion to admit Conway's testimony regarding her search of the CJIS database and the printout to the extent that it memorialized her search.

b. Written record of the search result. We next turn to the defendant's argument that exhibit 1, the written record of Conway's search and the result "no records found," was inadmissible hearsay. Here, the printout reflecting the result, "No Records Found," was not accompanied by a written certification by a custodial officer "that after [a] diligent search no record or entry of a specified tenor [was] found to

_____

[11] If the defendant has a common name, the Commonwealth can establish that the search result is not the defendant by using one or more additional parameters such as the date of birth or address.

exist in" the firearm license database.  Smith, 496 Mass. at 309, quoting Mass. R. Crim. P. 40 (b), 378 Mass. 917 (1979). Nonetheless, the defendant's argument is misplaced because the person who created the document -- Conway -- was present in court, was the person who performed the search, and testified to the result that no records were found for the defendant's name and date of birth.  See Smith, supra at 309 n. 7, quoting 4 J.H. Wigmore, Evidence § 1273, at 674-675 (Chadbourn rev. ed. 1972) ("rule permitting admission of certified copies should not be understood as 'provid[ing] an exclusive mode' to exclusion of sworn testimony authenticating document").  Accordingly, Conway's testimony was admissible and established the absence of a public record.  See Smith, supra at 310.

2.  Sufficiency of the evidence of unlawful possession of a firearm.  The defendant moved for a required finding of not guilty at both the close of the Commonwealth's case and the close of all evidence, arguing that there was insufficient evidence for the jury to conclude that the defendant (a) lacked a license to carry a firearm and (b) possessed a firearm.

In evaluating the denial of a motion for a required finding of not guilty, we review the evidence in the light most favorable to the Commonwealth to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Commonwealth v. Latimore, 378

Mass. 671, 677 (1979), quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979). "[C]ircumstantial evidence is sufficient to establish guilt beyond a reasonable doubt, and inferences drawn from such evidence need only be reasonable and possible; [they] need not be necessary or inescapable" (quotations and citations omitted). Commonwealth v. Gonzalez, 475 Mass. 396, 407 (2016).

"Because the defendant moved for required findings at the close of the Commonwealth's case and again at the close of all the evidence, '[w]e consider the state of the evidence at the close of the Commonwealth's case to determine whether the defendant's motion should have been granted at that time. We also consider the state of the evidence at the close of all the evidence, to determine whether the Commonwealth's position as to proof deteriorated after it closed its case'" (citation omitted). Commonwealth v. West, 487 Mass. 794, 799-800 (2021).

a. Lack of license to carry a firearm. The defendant asserts that there was insufficient evidence to prove he lacked a firearm license because Conway did not conduct a diligent search of the CJIS database. We disagree.

As discussed supra, Conway conducted a diligent search of the CJIS database, and her testimony was properly admitted. Thus, the jury could consider her testimony in determining

whether the defendant had a firearm license.[12]  Given the combination of (1) Conway's testimony that her search for the defendant in the CJIS database yielded no record and (2) the arresting officer's testimony providing the defendant's name and date of birth, there was sufficient evidence to prove beyond a reasonable doubt that the defendant lacked a license to carry a firearm.  Contrast Smith, 496 Mass. at 317 (DCJIS employee's testimony that he conducted search based on hearsay as to defendant's date of birth "did not alone amount to sufficient evidence that the defendant lacked a firearm license" because there was no "substantive evidence" of defendant's birth date).

b.  Possession of a firearm.  The defendant also argues that the witness testimony and surveillance video footage were insufficient to prove possession of a firearm beyond a reasonable doubt.  We disagree.

We recite the facts the jury could have found, viewing the evidence in the light most favorable to the Commonwealth.  See Latimore, 378 Mass. at 676-677.  Jean, through his bedroom window, saw Evel in an altercation in the parking lot with a male wearing a black shirt.  Jean ran outside, followed by their

---

[12] Even if we concluded that Conway's testimony was improper, we would still include it as evidence in our sufficiency analysis because it was admitted at trial.  See Commonwealth v. Davis, 487 Mass. 448, 462 (2021), S.C., 491 Mass. 1011 (2023) ("Ordinarily, in determining the sufficiency of the evidence, we include evidence improperly admitted").

mother, to where Evel and the man were fighting. When Jean stepped between them to break up the fight, he was hit in the face and then struck back at the man in the black shirt. The mother tried to separate the men. The fighting ended once the man in the black shirt calmed down.

After the initial fighting ended, Evel, Jean, and their mother began to walk back towards their apartment. As the family was walking away, the man in the black shirt approached the defendant. The surveillance video footage shows that the man in the black shirt and the defendant interacted and exchanged an object. Then, the man in the black shirt approached Evel, Jean, and their mother with what the jury could infer was the same object in his hand. The man in the black shirt pointed the black object at Jean, who reacted by immediately putting his hands up. Jean and his mother testified that the object the man in the black shirt was pointing at Jean was a firearm wrapped inside a sock. The man in the black shirt tried to strike Jean with the firearm but, as the man swung, he dropped the firearm and it skittered across the parking lot. The mother and the defendant both raced to the firearm, and the mother was able to retrieve it first. The defendant then pursued the mother and grabbed at her, repeatedly saying, "Please give it to me."

In the light most favorable to the Commonwealth, the jury could have reasonably inferred that the object exchanged between the defendant and the man in the black shirt was a firearm, and that the defendant's effort to retrieve the firearm from the mother was evidence that the defendant knowingly possessed it. See Commonwealth v. Witkowski, 487 Mass. 675, 681 n.6 (2021) (where "conflicting inferences are possible from the evidence, 'it is for the jury to determine where the truth lies'" [citation omitted]). Thus, there was sufficient evidence to establish that the defendant possessed a firearm.[13]

Judgment affirmed.

---

[13] The Commonwealth's case did not deteriorate during the presentation of the defendant's case because the only evidence the defendant introduced was body-worn camera video footage of an officer at the scene, which did not contradict any of the surveillance video footage or witness testimony. See West, 487 Mass. at 799-800.