COMMONWEALTH *vs.* CLINT A. CORNELIUS.

No. 08-P-1655.

Hampshire. July 24, 2009. - December 10, 2010.

Present: TRAINOR, BROWN, & WOLOHOJIAN, JJ.

*Firearms.*

This court concluded that, at the trial of an indictment charging a defendant
with unlawful possession of a firearm under G. L. c. 269, § 10, the Com-
monwealth is not required to prove that the defendant carried a firearm.
[415-416]
This court concluded that new residents of the Commonwealth and certain
returning residents, by satisfying the firearm identification card exception
set forth in G. L. c. 140, § 129C(*j*), thereby satisfy the firearm possession
exception set forth in G. L. c. 269, § 10(*a*)(4), for a limited period of time,
without also having to comply with the provisions of G. L. c. 140, § 131G
(relating to nonresidents) [416-419]; however, satisfaction of the firearm
identification card exception in § 129C(*j*) does not provide a defense to a
charge of violating G. L. c. 269, § 10(*m*), which prohibits the possession
of a large capacity weapon without a license [419-420].

INDICTMENT found and returned in the Superior Court Depart-
ment on August 14, 2007.

Questions of law were reported by *Judd J. Carhart*, J.

*Michael J. Traft* (*Richard J. Sinnott* with him) for the defend-
ant.

*Steven Greenbaum*, Assistant District Attorney, for the
Commonwealth.

TRAINOR, J. A Superior Court judge reported three questions to
this court in connection with a ten-count indictment of the
defendant. The indictment alleges that the defendant violated
various subsections of G. L. c. 269, § 10, by knowingly having
in his possession, or knowingly having under his control in a
vehicle, firearms or ammunition. During pretrial hearings, several
questions of law arose which the judge determined to be material

to the ultimate decision, and the resolution of which would be necessary in order to conduct a fair trial.[1]

With the consent of the Commonwealth and the defendant, the judge reported the following questions:

"1. Whether G. L. c. 269, § 10(a) requires proof that a defendant 'carried' a firearm?

"2. Whether satisfaction of the firearm identification card exception set out in G. L. c. 140, § 129C(j), by itself, satisfies the firearm possession exemption set out in G. L. c. 269, § 10(a)(4)?

"3. Whether satisfaction of the firearm identification card exception set out in G. L. c. 140, § 129C(j) is a defense for a violation of G. L. c. 269, § 10(m)?"

The judge included a summary of the essential facts as alleged by the Commonwealth and the defendant.

The Commonwealth alleges that:

"[i]n late February, 2007, the defendant drove from his home in Georgia to Mount Holyoke College in South Hadley, where his girlfriend, Lauren Satterfield, was a student. The defendant stayed in the dormitory room Satterfield shared with Rachel Gorman. On or about February 26, 2007, the defendant's car was towed to a private lot at the order of the college public safety department. On or about February 27, 2007, the defendant borrowed Gorman's car and drove to the lot where his car was being stored. He transferred some of his belongings to Gorman's car and drove back to the campus. Among the items placed in Gorman's car were a number of weapons the defendant had brought from Georgia, including a handgun, a shotgun,

---

[1]Rule 34 of the Massachusetts Rules of Criminal Procedure, as amended, 442 Mass. 1501 (2004), provides in pertinent part:

"If, prior to trial . . . , a question of law arises which the trial judge determines is so important or doubtful as to require the decision of the Appeals Court, the judge may report the case so far as necessary to present the question of law arising therein. If the case is reported prior to trial, the case shall be continued for trial to await the decision of the Appeals Court."

and a rifle. When Gorman learned that the weapons now were in her car, Gorman protested. The defendant returned to the lot and transferred the weapons back to his car. On or about March 3, 2007, the defendant was trespassed [*sic*] from the campus and moved to a hotel in Hadley.

"On or about March 5, 2007, Gorman reported this information to the public safety department. On March 8, 2008, the defendant's car was search[ed] pursuant to a warrant. Amongst the property seized was the following:

- .45 caliber pistol with 2 high capacity magazines

- 12 ga. shotgun

- .308 caliber semi-automatic rifle with 4 high capacity magazines

- 76 rounds — pellet-type shotgun ammunition

- 1494 rounds, .308 caliber full metal jacket ammunition

"The shot gun was loaded with two rounds of ammunition." The defendant alleges that:

"he arrived in South Hadley on February 26, 2007 and that his car was towed within hours of his arrival, that he intended to stay in Massachusetts, and that he was in the process of seeking an apartment at the time of his arrest."[2]

*Question one: "Whether G. L. c. 269, § 10(a) requires proof that a defendant 'carried' a firearm?"*

The first question reported was answered in *Commonwealth v. Duncan*, 71 Mass. App. Ct. 150 (2008). In *Duncan*, this court determined that "[t]o establish the defendant['s] guilt of unlawful possession of a firearm under G. L. c. 269, § 10(*a*), the Commonwealth was required to prove that the defendant (1) knowingly (2) had in [his] possession (3) a firearm (4) without a license." *Id.* at 153. In setting forth the elements of the statute, this court noted that the word "carries" was removed from

---

[2]Since the parties, unlike in *Commonwealth* v. *Wood*, 398 Mass. 135 (1986), have not stipulated to the defendant's residency, whether he was a new resident is of course a question of fact that remains to be decided in this case.

G. L. c. 269, § 10(*a*), in a 1990 amendment, and "[s]ince the time of that amendment, § 10(*a*) has simply prohibited the knowing possession of a firearm without a license." *Id.* at 153 n.4, citing *Commonwealth* v. *Colon*, 449 Mass. 207, 225-226, cert. denied, 552 U.S. 1079 (2007).[3]

The answer to question one is "no," G. L. c. 269, § 10(*a*), does not require proof that a defendant "carried" a firearm.

*Question two: "Whether satisfaction of the firearm identification card exception set out in G. L. c. 140, § 129C(j), by itself, satisfies the firearm possession exemption set out in G. L. c. 269, § 10(a)(4)?"*

Pursuant to G. L. c. 269, § 10(*a*), a person must either possess a valid license, or qualify for one of the exemptions to the licensing requirements, in order to "knowingly ha[ve] in his possession; or knowingly ha[ve] under his control in a vehicle[,]" a firearm within the Commonwealth.[4] The language at issue here is the provision contained in § 10(*a*)(4) which exempts those who have "complied with the provisions of sections one hundred and twenty-nine C and one hundred and thirty-one G of chapter one hundred and forty[.]"

---

[3]Section 2 of chapter 511 of the Acts & Resolves of 1990 inserted a new subsection (*a*) into G. L. c. 269, § 10. The new subsection reads in pertinent part:

"(*a*) Whoever, except as provided or exempted by statute, knowingly has in his possession; or knowingly has under his control in a vehicle; a firearm, loaded or unloaded, as defined in section one hundred and twenty-one of chapter one hundred and forty without either [followed by a list of exemptions] . . . shall be punished . . . ."

The previous version of the subsection required that the firearm be "carrie[d]."

[4]The firearm exemptions in G. L. c. 269, § 10(*a*), are as follows:

"(1) being present in or on his residence or place of business; or

"(2) having in effect a license to carry firearms issued under section one hundred and thirty-one of chapter one hundred and forty; or

"(3) having in effect a license to carry firearms issued under section one hundred and thirty-one F of chapter one hundred and forty; or

"(4) having complied with the provisions of sections one hundred and twenty-nine C and one hundred and thirty-one G of chapter one hundred and forty . . . ."

General Laws c. 140, § 129C, provides, in pertinent part:

> "No person, other than a licensed dealer or one who has been issued a license to carry a pistol or revolver or an exempt person as hereinafter described, shall own or possess any firearm, rifle, shotgun or ammunition unless he has been issued a firearm identification card by the licensing authority pursuant to the provisions of section one hundred and twenty-nine B."

Exempt persons, uses, and circumstances are defined in subsections (a) through (u) inclusive. Subsection (j) of § 129C provides a sixty-day grace period for certain persons, temporarily exempting them from the requirements of § 129C.[5] We must determine whether the exemption for new and returning residents contained in G. L. c. 140, § 129C(j), by itself, satisfies the firearm exemption contained in G. L. c. 269, § 10(a)(4).

The Commonwealth argues that the firearm exemption set out in § 10(a)(4) is to be read literally, and thus applies only to persons who have complied with the provisions of both "sections one hundred and twenty-nine C *and* one hundred and thirty-one G of chapter one hundred and forty"[6] (emphasis added). We do not agree with this contention.

---

[5]General Laws c. 140, § 129C, reads:

> "(j) Any new resident moving into the commonwealth, any resident of the commonwealth returning after having been absent from the commonwealth for not less than 180 consecutive days or any resident of the commonwealth upon being released from active service with any of the armed services of the United States with respect to any firearm, rifle or shotgun and any ammunition therefor then in his possession, for 60 days after such release, return or entry into the commonwealth[.]"

[6]The exemption contained in G. L. c. 140, § 131G, provides:

> "Any person who is not a resident of the commonwealth may carry a pistol or revolver in or through the commonwealth for the purpose of taking part in a pistol or revolver competition or attending any meeting or exhibition of any organized group of firearm collectors or for the purpose of hunting; provided, that such person is a resident of the United States and has a permit or license to carry firearms issued under the laws of any state, district or territory thereof which has licensing requirements which prohibit the issuance of permits or licenses to persons who have been convicted of a felony or who have been convicted of the unlawful use, possession or sale of narcotic or harmful drugs;

The Supreme Judicial Court in *Commonwealth* v. *Wood*, 398 Mass. 135 (1986), answered a similar reported question. A District Court judge asked the court: "Can a person who possesses *and carries* a firearm on his person or under his control in a vehicle without a license be convicted [of violating G. L. c. 269, § 10(*a*) (1984 ed.)] where that person is a 'new resident' within the meaning of G. L. c. 140, § 129C(*j*)?" (Emphasis supplied.) *Id.* at 135. The court answered in the affirmative based on the earlier version of § 10(*a*) which existed in 1984, and concluded that because Wood was not charged with possession of a firearm without a firearm identification card issued pursuant to G. L. c. 140, § 129B, but rather with unlawfully carrying a firearm under G. L. c. 269, § 10(*a*), the exception set out in § 129C(*j*) did not allow the defendant to carry a firearm during the sixty-day period he qualified as a new resident. *Wood, supra* at 137. The court emphasized that since the defendant was a new resident within the meaning of § 129C(*j*) at the time of his arrest, "[t]his status entitled [him] to own or to possess a firearm during his first sixty days in the State, notwithstanding his noncompliance with the ordinary licensing requirements." *Ibid.*[7]

The court also addressed, briefly, "the defendant's argument that requiring a person to comply with the provisions of *both* G. L. c. 140, § 129C and § 131G, essentially eliminates the exemption provided by G. L. c. 269, § 10(*a*)(3)" (emphasis supplied). *Id.* at 138. The court concluded that, because "G. L. c. 140, § 131G, by its own terms, permits the carrying of a firearm . . . there is no need to satisfy the provisions of both §§ 129C and 131G . . . in all circumstances." *Ibid.* We further note that, since § 129C(*j*) refers to *new residents* and certain

provided, further, that in the case of a person traveling in or through the commonwealth for the purpose of hunting, he has on his person a hunting or sporting license issued by the commonwealth or by the state of his destination. Police officers and other peace officers of any state, territory or jurisdiction within the United States duly authorized to possess firearms by the laws thereof shall, for the purposes of this section, be deemed to have a permit or license to carry firearms as described in this section."

[7]The version of G. L. c. 269, § 10(*a*), that the court considered in 1984 had been previously rewritten by St. 1975, c. 113, § 2.

*returning residents* who possess a firearm, while § 131G refers to *nonresidents* who carry certain firearms, it would be virtually impossible to ever satisfy the requirements of both sections simultaneously.

The answer to question two is "yes," by satisfying the exception set out in G. L. c. 140, § 129C(*j*), new residents and certain returning residents thereby satisfy the firearm exemption set out in G. L. c. 269, § 10(*a*)(4), for a limited period of time, without also complying with the provisions of G. L. c. 140, § 131G.

*Question three: "Whether satisfaction of the firearm identification card exception set out in G. L. c. 140, § 129C(j) is a defense for a violation of G. L. c. 269, § 10(m)?"*

The third question asks whether the new resident exemption contained in G. L. c. 140, § 129C(*j*), provides a defense for violation of G. L. c. 269, § 10(*m*), by knowingly having in one's possession, or knowingly having control of, in a vehicle, a "large capacity weapon or large capacity feeding device therefor," without being in possession of a valid class A or class B license to carry firearms issued under authority of G. L. c. 140, §§ 131 or 131F.[8]

Section 10(*m*) goes on to state that "[t]he possession of a valid firearm identification card issued under section 129B shall not be a defense for a violation of this subsection[.]" General Laws c. 140, § 129C, provides an exemption only from the firearm identification card requirement set forth in G. L. c. 140, § 129B, not the licensing requirements of G. L. c. 140, §§ 131 or 131F. In addition, G. L. c. 140, § 129C(*j*), entitles new residents to own or possess "any firearm, rifle or shotgun and any ammunition therefor." A large capacity feeding device is not among the list of items covered by G. L. c. 140, § 129C(*j*).

---

[8]General Laws c. 269, § 10(*m*), reads in pertinent part:

"(*m*) Notwithstanding the provisions of paragraph (*a*) or (*h*), any person not exempted by statute who knowingly has in his possession, or knowingly has under his control in a vehicle, a large capacity weapon or large capacity feeding device therefor who does not possess a valid Class A or Class B license to carry firearms issued under section 131 or 131F of chapter 140, except as permitted or otherwise provided under this section or chapter 140, shall be punished by imprisonment in a state prison for not less than two and one-half years nor more than ten years."

Also, the definition set forth in G. L. c. 140, § 121, for a "large capacity weapon" includes specific language that "[t]he term 'large capacity weapon' shall be a secondary designation and shall apply to a weapon *in addition* to its primary designation as a firearm, rifle or shotgun" (emphasis added).

The answer to question three is "no," satisfaction of G. L. c. 140, § 129C(*j*), does not provide a defense to a violation of G. L. c. 269, § 10(*m*).

*Conclusion.* For the reasons set forth above, we answer Questions 1 and 3, "No," and Question 2, "Yes."

*So ordered.*