NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

18-P-720                                          Appeals Court


COMMONWEALTH  vs.  JAMES R. PAUL.


No. 18-P-720.

Essex.     April 5, 2019. - October 17, 2019.

Present:  Agnes, Maldonado, & Sacks, JJ.


Firearms.  License.  Evidence, Firearm.  Practice, Criminal,
    Affirmative defense, Instructions to jury.  Statute,
    Construction.  Words, "Resident."



    Complaints received and sworn to in the Lawrence Division
of the District Court Department on August 5, 2015, and
September 2, 2015.

    The cases were tried before Holly V. Broadbent, J.


    Alison R. Bancroft for the defendant.
    Kayla M. Johnson, Assistant District Attorney, for the
Commonwealth.


    AGNES, J.  The principal issue in this case is whether the

law that exempts a "new resident moving into the commonwealth"

from the requirement of a license to possess a firearm "for 60

days after such . . . entry into the commonwealth," G. L.

c. 140, § 129C (j), applies to the circumstances of this case.

The defendant, James R. Paul, appeals from his convictions of possession of a firearm without a license, in violation of G. L. c. 269, § 10 (a); possession of ammunition without a firearm identification card (FID), in violation of G. L. c. 269, § 10 (h) (1); and possession of a loaded firearm without a license, in violation of G. L. c. 269, § 10 (n).[1]  For the following reasons, we conclude that the exemption does not apply.  Thus, we affirm the convictions, except for the loaded firearm conviction, which we vacate on a separate ground and remand.

On August 5, 2015, at approximately 6:58 A.M., Trooper Michael O'Brien responded to a radio broadcast of a pedestrian, the defendant, walking southbound on Interstate Highway 93 approximately six miles south of the New Hampshire border.  The trooper located the defendant walking between the guardrail and the tree line.  The trooper pulled over into an emergency cutout in the road ahead of him and told the defendant that he could not walk on the highway.  In the ensuing conversation, the defendant told the trooper that he was coming from New Hampshire and trying to get to a gasoline (gas) station a few exits south

---

[1] The defendant also was charged with trespass with a firearm, impersonating a police officer, and possession of marijuana, which were the subject of a motion to dismiss by the Commonwealth, and possession of a large capacity firearm, which was disposed of via nolle prosequi.

of Interstate Highway 495 to meet a friend. The defendant stated that he was homeless and that, although he "still travels the country," "his end goal was to get to Michigan." He appeared to the trooper as if he had camped the night before because he looked disheveled, wore unclean clothes, and "hadn't bathed in a couple of days." The trooper offered to drive the defendant to the gas station he was walking to, and the defendant accepted the invitation.

The trooper asked the defendant if he had any weapons, to which the defendant replied in the affirmative, pointing to his backpack, stating that "his uniform" was in it and that he worked for Homeland Security. The trooper repeated his question, and the defendant "stated that there was a firearm in the bag." The defendant complied with the trooper's instruction to step back. The defendant directed the trooper to where in the backpack the firearm was located. The trooper located a Ruger SR9 semiautomatic pistol in its holster, loaded with five rounds of ammunition, and a second fully loaded magazine, and secured the weapon. Other items in the bag included an active New Hampshire license to carry a firearm, a New Hampshire driver's license, the defendant's passport, a water purification kit, and other items indicative of someone camping. The defendant did not produce any law enforcement credentials or a Massachusetts license to carry a firearm.

Trooper O'Brien advised the defendant of his Miranda rights. The defendant stated that he could not speak with the trooper about his clearance but would speak with the trooper's supervisor. The defendant was taken into custody and driven to the Andover State police barracks, where he spoke with the station commander. The defendant reiterated that he worked for "Homeland" but declined to speak further. At booking, Trooper O'Brien advised the defendant of the charges against him, and the defendant replied that "the firearm was for life and property."

Prior to trial, the defendant filed a motion to dismiss the charges, which, following a hearing on the motion, the court denied on February 10, 2016. Also prior to trial, the defendant filed a "Notice of Intent to Rely Upon Exemption," referring in particular to G. L. c. 140, § 129C (j), which provides in part that "any new resident moving into the commonwealth" is exempt from the firearm licensing laws for sixty days after such person enters into the Commonwealth.

A two-day jury trial commenced on July 27, 2017. As to the defendant's request to present the § 129C (j) exemption as a defense, the judge indicated that, based on the defendant's proffer, she was not yet persuaded that there was sufficient evidence for her to instruct the jury on that defense. Following the close of evidence, the defendant filed a motion

for a required finding of not guilty, which, after a hearing, was denied. The court also denied the defendant's request to instruct the jury on the new resident exemption, to which the defendant objected. The jury found the defendant guilty on all counts.

Discussion. 1. The G. L. c. 269, § 10 (n), conviction. a. Lack of instruction on knowledge. The defendant argues, and the Commonwealth concedes, that the conviction of unlawful possession of a loaded firearm in violation of G. L. c. 269, § 10 (n), must be reversed because the judge failed to instruct the jury that proof that the defendant was aware that the firearm was loaded is an essential element of the offense. In Commonwealth v. Brown, 479 Mass. 600, 608 (2018), the Supreme Judicial Court held that in order to convict a person of a § 10 (n) violation the Commonwealth must prove that the defendant had knowledge that the firearm was loaded. Although Brown was decided after the trial in this case, it has application to this case because the court was interpreting a statute enacted before the conduct of the defendant that is the basis for the charge. See Eaton v. Federal Nat'l Mtge. Ass'n, 462 Mass. 569, 587 (2012) ("In general, when we construe a statute, we do not engage in an analysis whether that interpretation is given retroactive or prospective effect; the interpretation we give the statute usually reflects the court's

view of its meaning since the statute's enactment"). Despite the absence of an objection by the defendant, the omission of an instruction that permits the jury to convict without finding an essential element of an offense creates a substantial risk of a miscarriage of justice unless we can fairly say that "either the element at issue can be 'ineluctably inferred' from the evidence such that the jury were 'required to find' it, Commonwealth v. Azar, 435 Mass. 675, 688 (2002), or the jury's verdicts on the other counts on which the defendant was convicted compel the conclusion they 'necessarily found' the element on which they were not instructed, Commonwealth v. McCray, 93 Mass. App. Ct. 835, 847 (2018)." Commonwealth v. Mitchell, 95 Mass. App. Ct. 406, 412 (2019). Here, there was no direct evidence that the defendant knew the firearm contained in his backpack was loaded, and the circumstantial evidence of his knowledge did not compel such a finding.

We also consider that, following the submission of its brief, the Commonwealth filed a written "notice of withdrawal of argument." The Commonwealth explained that in light of our decision in Commonwealth v. Resende, 94 Mass. App. Ct. 194, 202-203 (2018), it could no longer argue that merely because there was sufficient evidence that the defendant knew the firearm was loaded, the omission of an instruction on such knowledge as an element could not have created a substantial risk of a

miscarriage of justice. We attach significance to the Commonwealth's concession but reach the same conclusion based on our independent assessment of the evidence. See Commonwealth v. Poirier, 458 Mass. 1014, 1015 (2010), quoting Young v. United States, 315 U.S. 257, 258-259 (1942) ("Confessions of error are, of course, entitled to and given great weight," but the court's "judicial obligations compel us to examine independently the errors confessed").

b. Sufficiency of the evidence as to the defendant's knowledge. In reviewing the sufficiency of the evidence, we determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Commonwealth v. Latimore, 378 Mass. 671, 677 (1979), quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979). Based on the evidence that the defendant was carrying the firearm in a backpack on his person, that he knew precisely where in the backpack it could be found, that he told the trooper that he possessed the firearm for "life and property," that he appeared to have been living outdoors, and that he had a fully loaded magazine in the same section of the backpack where the firearm was stored, we conclude that a reasonable jury would be warranted in finding beyond a reasonable doubt that the

defendant had knowledge that his firearm was loaded.  See

Resende, 94 Mass. App. Ct. at 199-201.

2.  The applicability of the "new resident" exemption to

the licensing requirement.  A person such as the defendant, who

does not have a valid Massachusetts firearm license, see G. L.

c. 140, § 129C (j), and who knowingly has possession of a

firearm, whether loaded or unloaded, not in his home or

business, is guilty of a felony unless at least one of several

exemptions is applicable.  See G. L. c. 269, § 10 (a);

Commonwealth v. Harris, 481 Mass. 767, 772 (2019).[2]  The

exemptions are considered "affirmative defenses," which means

---

[2] "General Laws c. 269, § 10 (a), provides for punishment of any individual who, 'except as provided or exempted by statute, knowingly has in his possession; or knowingly has under his control in a vehicle; a firearm, loaded or unloaded.'  The statute defines a number of categories of persons who are 'exempted by statute' from punishment under G. L. c. 269, § 10 (a).  Exemptions apply to new residents of the Commonwealth, see G. L. c. 140, § 129C (j); holders of a Massachusetts firearm license, see G. L. c. 140, §§ 131 (a), (b), 131F; holders of certain firearm licenses issued by other jurisdictions, see G. L. c. 140, §§ 129C (u), 131G; those with firearm identification (FID) cards who possess firearms in their residences or places of business, see G. L. c. 269, § 10 (a) (1); G. L. c. 140, § 129C; and certain nonresidents traveling in or through the Commonwealth, see G. L. c. 140, §§ 129C (h), 131F, 131G.  In addition, exemptions exist for specific types of firearms, certain persons, and specified uses" (footnote omitted).  Harris, 481 Mass. at 771-772.  See Commonwealth v. Cornelius, 78 Mass. App. Ct. 413, 419 (2010) ("[B]y satisfying the exception set out in G. L. c. 140, § 129C (j), new residents and certain returning residents thereby satisfy the firearm exemption set out in G. L. c. 269, § 10 (a) (4), for a limited period of time, without also complying with the provisions of G. L. c. 140, § 131G").

that the absence of an exemption is not an element of a § 10 (a) violation.  Harris, 481 Mass. at 772.  "Because it is an affirmative defense, a defendant has the initial burden of production" as to any exemption.  Id.  The Commonwealth assumes the burden of persuading the finder of fact that the exemption does not apply only if first there is evidence presented that supports the exemption's existence.  Id. at 772-773.

At the end of the first day of trial testimony, the judge conducted a hearing with respect to the defendant's pretrial notice that he intended to rely on the G. L. c. 140, § 129C (j) exemption.  The judge noted that contrary to an earlier proffer by defense counsel, she was not aware of any evidence that the defendant was "moving into the Commonwealth" or that he had any plans to remain in Massachusetts.  Defense counsel argued that the jury could draw a reasonable inference that at the time of the defendant's arrest he was a resident of Massachusetts because he was then in Massachusetts, and they could infer that the defendant had spent the previous night camping in Massachusetts which would satisfy the statutory requirement that one had to be "moving into the Commonwealth" to come within the § 129C (j) exemption.  The judge ruled that based on the evidence before the court, the defendant did not qualify for the § 129C (j) exemption, and therefore she would not instruct the jury on it.

The exemption relied on by the defendant provides in part that the requirement of a firearm identification card to own or possess a firearm in Massachusetts shall not apply to "any new resident moving into the commonwealth . . . for 60 days after such . . . entry into the commonwealth."  G. L. c. 140, § 129C (j).  This exemption, in one form or another, has been part of § 129C since it was adopted in 1968.[3]  When the meaning of a statute is at issue courts must begin the analysis by recognizing "that the primary source of insight into the intent of the Legislature is the language of the statute." International Fid. Ins. Co. v. Wilson, 387 Mass. 841, 853 (1983).  We must give the words used by the Legislature their plain meaning unless the Legislature has supplied a definition of one or more of the statute's words or used a word in a technical sense.  See G. L. c. 4, § 6, third clause.  Accord Phillips v. Equity Residential Mgt., L.L.C., 478 Mass. 251, 257 (2017); Benoit v. Boston, 477 Mass. 117, 123 (2017); Yeretsky v. Attleboro, 424 Mass. 315, 319 (1997).  We will depart from this tenet only when otherwise the result we reach would be illogical or irrational.  See Sebago v. Boston Cab Dispatch, Inc., 471

_____

[3] General Laws c. 140, § 129C, was added to the General Laws by St. 1968, c. 737, § 7.  Although § 129C has been amended several times since 1968, the language at issue in this case, "any new resident moving into the commonwealth," has remained unchanged.

Mass. 321, 339 (2015); Sullivan v. Brookline, 435 Mass. 353, 360 (2001). In interpreting a statute, "each clause or phrase is to be construed with reference to every other clause or phrase without giving undue emphasis to any one group of words, so that, if reasonably possible, all parts shall be construed as consistent with each other so as to form a harmonious enactment effectual to accomplish its manifest purpose." Selectmen of Topsfield v. State Racing Comm'n, 324 Mass. 309, 312-313 (1949). See Custody of Victoria, 473 Mass. 64, 74 (2015); Swift v. Registrars of Voters of Quincy, 281 Mass. 271, 276 (1932).

The purpose of G. L. c. 140, § 129C (j), is to provide certain residents -- specifically, "any resident of the commonwealth" who returns "after having been absent from the commonwealth for not less than 180 days" and "any new resident moving into the commonwealth" -- with a sixty-day grace period during which they may own or possess a firearm without a valid firearm identification card. In Rummel v. Peters, 314 Mass. 504, 511-513 (1943), the Supreme Judicial Court surveyed case law from Massachusetts and other jurisdictions that addressed the meaning of the term "resident." In Rummel, the court concluded that "[r]esidence is a word of varied meanings, ranging from domicil down to personal presence with some slight degree of permanence." Rummel, 314 Mass. at 511. While in Rummel the court was required to define the term "legal

residence," as it appeared in G. L. c. 90, § 3, as amended by St. 1939, c. 325,[4] the court's discussion strongly suggested that when the term "resident" is used by the Legislature and is not otherwise defined or qualified, it means "a personal presence at some place of abode with no present intention of definite and early removal and with a purpose to remain for an undetermined period, not infrequently but not necessarily combined with a design to stay permanently."  Id. at 511, quoting Jenkins v. North Shore Dye House, Inc., 277 Mass. 440, 444 (1931).[5]

_____

[4] In Rummel, the question whether a man who had lived in Pennsylvania all his life, but who also lived in an apartment in Brookline with his wife nine or ten months of the year while working in Boston, was a "legal" resident of Massachusetts when he was operating a motor vehicle involved in a collision in Massachusetts.  Rummel, 314 Mass. at 506.  At the time of the collision, the man's vehicle was registered in Pennsylvania, but he had a Massachusetts driver's license.  Id. at 506-507.  The court noted that the Massachusetts statute that controlled the question contained a definition of a "nonresident" as "any person whose legal residence is not within the commonwealth." Id. at 513.  In concluding that the man fell within the definition of a nonresident of Massachusetts and therefore was not required to register the vehicle in Massachusetts, the court explained that "[t]he statute contemplates that a man may be a nonresident although he has a regular place of abode or residence here," because the statute's registration requirement is limited to persons whose "legal residence" is in Massachusetts.  Id. at 513.  The use of the phrase "'legal residence' in the statutory definition indicate[s] that the Legislature conceived of a 'legal residence' as something of which a person must have one and cannot have more than one. That is true of domicil, but not of residence in the ordinary sense.  The expression 'legal residence' has been used in the sense of domicil."  Id. at 514.

The view that the term "residence" means both presence in a jurisdiction and an intention to remain there for some indefinite period of time is reflected in other decisions by the Supreme Judicial Court. See Aufiero v. Aufiero, 332 Mass. 149, 153 (1955), quoting Marlborough v. Lynn, 275 Mass. 394, 397 (1931) ("Residence imports something of expected permanence in way of personal presence. It signifies intended continuance as distinguished from speedy change"); Cambridge v. West Springfield, 303 Mass. 63, 67 (1939). This view is reinforced when we examine the context in which the term "resident" appears in § 129C (j). The language of the exemption in question refers to a "new resident moving into the commonwealth." This language

---

[5] The Restatement of Conflict of Laws § 9 comment e, at 20 (1934), in effect at the time of the decision in Jenkins, provided that, "'residence' is often but not always used in the sense of domicil, and its meaning in a legal phrase must be determined in each case. It is sometimes used as equivalent to 'domicil'; sometimes it has a broader meaning; and sometimes it has a narrower meaning. It may mean . . . the domicil, namely, at which a person is resident. . . . [It may also mean] a dwelling-place adopted for the time being, but not necessarily with such an intention of making a home there as to create a domicil." In the current Restatement (Second) of Conflict of Laws § 11 comment k, at 45 (1969), "residence" is described as "an ambiguous word whose meaning in a legal phrase must be determined in each case. Frequently it is used in a sense equivalent to domicil. On occasion it means something more than domicil, namely, a domicil at which a person actually dwells. On the other hand, it may mean something else than domicil, namely, a place where the individual has an abode or where he has settled down to live for a period of time, but not necessarily with such an intention of making a home there as to create a domicil."

expresses a legislative intent to exclude persons who are merely passing through or visiting the Commonwealth without any intention of remaining in the Commonwealth.[6]  Compare G. L. c. 140, § 129C (h) (creating limited exemption for rifles, shotguns, and ammunition therefor possessed by "nonresidents traveling in or through the commonwealth").  By its own terms, however, the exemption does not require that a resident must remain in Massachusetts.  See G. L. c. 140, § 129C (j) (sixty-day grace period applies to "[a]ny resident of the commonwealth" who returns "after having been absent from the commonwealth for not less than 180 consecutive days" as well as to "any new resident moving into the commonwealth").[7]

---

[6] Standard English language and legal dictionaries further support this interpretation of the term "resident."  See Black's Law Dictionary 1424 (9th ed. 2009) (defining "resident" as "a person who lives in a particular place," or "a person who has a home in a particular place"); Merriam-Webster's Collegiate Dictionary 1060 (11th ed. 2005) (defining "resident" as one who is "living in a place for some length of time"); Webster's New Universal Unabridged Dictionary 1540 (2d ed. 1983) (defining "resident" as "one who lives in a place, as distinguished from a visitor or transient").

[7] In this case we are not required to, and specifically decline to, express an opinion whether certain persons who are physically present in the Commonwealth only for certain parts of the year (e.g., seasonal home owners, seasonal workers, seasonal or fulltime business owners who reside out of State, and students who are of age to possess a firearm) would qualify for the § 129C (j) exemption.  It is the general rule that a person can have only one domicile, but may have more than one residence.  See Harris, 481 Mass. at 781 ("Because G. L. c. 269 does not define the term 'resident,' the judge instructed that a defendant 'can only have one domicile under the law,' but 'can

In the present case, viewing the evidence in the light most favorable to the defendant, he was in Massachusetts to meet a friend at a gas station and had a plan to move on to Michigan. There was no evidence that the defendant intended to stay in Massachusetts for any longer than necessary to meet his friend before continuing his travels to other States; thus, there is no basis in the evidence to support an inference that he was "a new resident moving into the commonwealth." The judge, therefore, was correct in denying the defendant's request for an instruction on the § 129C (j) exemption.[8]

---

have lots of residences[,] so we use the [term] residence in its common everyday meaning and understanding that a person may have more than one residence at any one given time'"). See also Doyle v. Goldberg, 294 Mass. 105, 108 (1936); Commonwealth v. Becker, 71 Mass. App. Ct. 81, 92 (2008). Further, it should be noted that the Legislature has provided that firearm licenses are not limited to persons who qualify as residents of Massachusetts. See G. L. c. 140, § 131 (d) (allowing residents or persons "having a place of business within the [relevant] jurisdiction of the licensing authority" to obtain firearm licenses); G. L. c. 140, § 131F (providing in part that "[a] Class A or Class B temporary license to carry firearms or feeding devices or ammunition therefor, within the commonwealth, may be issued by the colonel of state police, or persons authorized by him, to a nonresident or any person not falling within the jurisdiction of a local licensing authority or to an alien that resides outside the commonwealth for purposes of firearms competition and subject to such terms and conditions as said colonel may deem proper").

[8] The defendant's remaining argument, that G. L. c. 269, § 10, and G. L. c. 140, § 129C, are unconstitutional because they infringe on his rights under the Second Amendment to the United States Constitution, was rejected in Harris, 481 Mass. at 772-773.

Conclusion.  For the above reasons, on the charge of unlawful possession of a firearm in violation of G. L. c. 269, § 10 (a), the judgment is affirmed.[9]  On the charge of unlawful possession of ammunition in violation of G. L. c. 269, § 10 (h) (1), the conviction is affirmed, but the case is remanded for resentencing on that charge.[10]  On the charge of unlawful possession of a loaded firearm in violation of G. L. c. 269, § 10 (n), the judgment is vacated, the verdict is set aside, and the case is remanded for further proceedings on that charge consistent with this opinion.

So ordered.

---

[9] The judge imposed the minimum mandatory sentence of eighteen months in the house of correction on the conviction of unlawfully carrying a firearm in violation of G. L. c. 269, § 10 (a).  We do not see a need, therefore, to remand that conviction for resentencing.

[10] This charge was included in the same complaint as the charge of unlawful possession of a loaded firearm.  The defendant was convicted of this charge and sentenced to a term of probation for one year to be served from and after the sentence of incarceration on the loaded firearm conviction.  Because the judge's decision to impose a from and after sentence of probation on this charge may have been based in part on the conviction on the charge we have ordered to be vacated, the defendant is entitled to be resentenced on the conviction for unlawful possession of ammunition.